45 P.3d 1232

**Sandra Jean WIDOFF, Plaintiff–Appellant,**

v.

**Pamela G. WIENS and Daniel Saint, III, Defendants–Appellees.**

No. 1 CA–CV 01–0630.

Court of Appeals of Arizona, Division 1, Department D.

May 16, 2002.

384

Sandra J. Widoff, In propria persona, Scottsdale, Plaintiff–Appellant.

Augustine B. Jimenez III, P.C., By Augustine B. Jimenez III, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

WEISBERG, Judge.

¶ 1 Sandra Jean Widoff ("Mother") appeals from the superior court's dismissal of her complaint, which alleged that Pamela G. Wiens ("Wiens") and Daniel Saint, III ("Saint") (together, "Defendants") failed to adequately perform their duties as guardians ad litem in violation of Mother's civil rights pursuant to 42 U.S.C. § 1983; the United States Constitution, Amendment XIV, Section 1; and the Arizona Constitution, Article 2, Section 4. We affirm without reaching the merits of Mother's claims because Defendants are absolutely immune from those claims.

### FACTS AND PROCEDURAL HISTORY

¶ 2 This matter arose out of an emergency motion for custody filed by Mother's former husband, Marc W. Widoff ("Father"). In that motion, Father asked for custody of his then nine-year-old daughter, Xanadu, alleging that Mother's live-in boyfriend ("TJS") engaged in sexually deviant behavior in front of Xanadu's minor sibling and that TJS operated a pornography business out of Mother's home.

¶ 3 By order dated August 18, 1998, the trial court appointed Saint as guardian ad litem for Xanadu and authorized him "to visit both homes and to interview both parties" prior to the evidentiary hearing. Saint arranged for Wiens, an attorney who, according to Saint, was authorized to serve as

guardian ad litem in domestic relations matters, to conduct some or most of the investigation and to appear at the evidentiary hearing as Xanadu's guardian ad litem. Saint claims that he requested Wiens' assistance due to time constraints and that such assistance was permitted under his contract with Maricopa County. Saint further claims that, although he delegated much of the responsibility to Wiens, he still participated in the investigatory process. Mother counters that the trial court never appointed Wiens to act as guardian ad litem and that Saint improperly assigned the case to her. Also, Mother asserts that neither Saint nor Wiens visited her home to interview her, although ordered to do so by the trial court.

¶4 Defendants respond that they attempted to locate Mother's address and phone number several times to no avail. However, Defendants were able to locate Father and arrange for Father and Xanadu to be interviewed prior to the evidentiary hearing. Based on these interviews, as well as police confirmation that TJS was a convicted sex offender and had recently been charged with indecent exposure, Wiens recommended that custody of Xanadu remain with Father and that Mother's visitation be supervised. Wiens presented this recommendation at an August 24, 1998 evidentiary hearing.

¶5 On September 14, 1998, the trial court found that Mother was deeply committed to TJS and that TJS's status as a registered sex offender, his criminal convictions (for indecent exposure, felony forgery, misdemeanor theft, trespass, and possession of a controlled substance), his pending charges of indecent exposure, and his production of pornographic material out of Mother's home threatened the safety of Xanadu. The trial court therefore affirmed an earlier order granting emergency custody to Father and ordered Mother to have only supervised visits with Xanadu.

¶6 On February 9, 1999, the trial court reaffirmed Father's custody of Xanadu. In that minute entry, the trial court stated:

This is a very sad case involving a child who needs more contact with her Mother, but a Mother who has placed her needs above those of her child. Mother's live-in boyfriend, [TJS], has one prior conviction of a sex offense, recently ran a pornographic web site with himself as a subject, and is currently under indictment for three new sex offenses. Yet Mother fails to recognize any risk to her daughter and even refused to participate in the dispute assessment ordered by the Court. She defiantly stated in her closing argument: "I'm not going to get rid of [TJS]."

While the Court would not necessarily have required Mother and [TJS] to separate, based on the risks presented a dispute assessment was certainly justified. Based on the risks presented, Mother's refusal to participate in a dispute assessment and the recommendation of the child's guardian ad litem,

IT IS ORDERED that Father shall have sole care and custody of the minor child, Xanadu ... Widoff....

¶7 Mother subsequently filed a complaint alleging that Saint failed to perform his duties as guardian ad litem of Xanadu, and that Wiens both improperly assumed those duties and improperly performed them. Defendants moved to dismiss Mother's complaint, asserting both qualified and absolute immunity. The trial court granted Defendants' motion to dismiss, reasoning that "Defendants were clothed with absolute immunity as they were acting as part of the judicial process." Mother filed a motion for reconsideration that was denied. Mother then timely appealed the court's dismissal of her complaint and its denial of her motion for reconsideration.

## DISCUSSION

¶8 "This court will affirm the dismissal of a complaint for failure to state a claim only if the plaintiff would not be entitled to relief under any set of facts pleaded in the complaint that are susceptible of proof." *Albers v. Edelson Tech. Partners L.P.*, 201 Ariz. 47, 50, ¶7, 31 P.3d 821, 824 (App.2001). "In reviewing the complaint, we assume the truth of all facts alleged and construe them in the light most favorable to the [plaintiff]." *Id.* Whether judicial immunity exists is a question of law for the court, which is re-

viewed de novo. *Adams v. State,* 185 Ariz. 440, 443, 916 P.2d 1156, 1159 (App.1995).

■ ¶ 9 Judges and certain court officials who assist the court in the judicial process and who perform functions intimately related to, or an integral part of, the judicial process are protected by judicial or absolute immunity for acts performed in their official capacities. *Ashelman v. Pope,* 793 F.2d 1072, 1075 (9th Cir.1986) (en banc); *Acevedo v. Pima County Adult Probation Dep't,* 142 Ariz. 319, 321, 690 P.2d 38, 40 (1984). The purpose behind judicial immunity is to protect "principled and fearless decision-making." *Rankin v. Howard,* 633 F.2d 844, 847 (9th Cir.1980) (quoting *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). Although, in Arizona, judicial immunity has not specifically been extended to guardians ad litem, it has been extended to similarly situated court-appointed officials such as psychologists and psychiatrists who assist the court in making decisions. *See Lavit v. Superior Court,* 173 Ariz. 96, 99, 839 P.2d 1141, 1144 (App.1992).[1]

¶ 10 In *Lavit,* a father brought an action against a psychologist who had conducted a child custody evaluation, claiming that the psychologist had made a biased custody evaluation favoring the mother. *Id.* at 98, 839 P.2d at 1143. The psychologist brought a motion for summary judgment, arguing that judicial immunity protected him in his role as a court-appointed psychologist. *Id.* After the trial court denied that motion, this court reversed and held that the psychologist was entitled to judicial immunity. *Id.* at 101, 839 P.2d at 1146. We reasoned that the psychologist's evaluations and recommendations aided the trial court in determining custody and that his services were performed pursuant to a court order. *Id.* We further reasoned that without such immunity, "professionals risk exposure to lawsuits whenever they perform quasi-judicial duties" and that such exposure to liability "could deter their acceptance of court appointments or color their recommendations." *Id.* at 99, 839 P.2d at 1144.

■ ¶ 11 Adopting the rationale of *Lavit,* we hold that the trial court properly determined that Saint was entitled to judicial immunity. Pursuant to court order, Saint acted as guardian ad litem and asked Wiens to assist him. While Mother alleges that Saint turned the entire case over to Wiens and abandoned his role as guardian ad litem, the trial court did not make such a finding. We must therefore assume that it found that Saint remained involved in the investigation and retained his immunity. *See Horton v. Mitchell,* 200 Ariz. 523, 526, ¶ 13, 29 P.3d 870, 873 (App.2001) ("When there is no request for findings and the trial court does not make specific findings of fact, we must assume that the trial court found every fact necessary to support its [ruling] and must affirm if any reasonable construction of the evidence justifies the decision.") (alteration in original) (internal quotation marks and citations omitted).[2]

¶ 12 We also find persuasive the policy reasons expressed by the Ninth Circuit that afford absolute immunity to prosecutors. *See Meyers,* 812 F.2d at 1156–57. As with a prosecutor, a guardian ad litem must perform his or her duties without fear of the threat of litigation. *See id.* at 1156. If a

1. Arizona courts and the Ninth Circuit in interpreting Arizona law have also found that certain individuals who perform activities that are essential to the functioning of the judicial system are entitled to absolute protection from suit. *See, e.g., Meyers v. Contra Costa County Dep't of Soc. Servs.,* 812 F.2d 1154, 1157 (9th Cir.1987) (holding that a social worker was entitled to absolute immunity in performing quasi-prosecutorial functions connected with initiation and pursuit of child dependency proceedings); *Acevedo,* 142 Ariz. at 322, 690 P.2d at 41 (holding that a probation officer was entitled to absolute immunity in preparing and submitting presentence reports because such reports were "an integral part of the sentencing process"); *Nation v. Colla,* 173 Ariz. 245, 252, 841 P.2d 1370, 1377 (App. 1991) (holding that a CPS caseworker was entitled to absolute immunity for activities relating to the initiation and filing of a dependency petition); *cf. Adams,* 185 Ariz. at 444, 916 P.2d at 1160 (holding that an adoption caseworker's investigative and supervisory conduct undertaken outside the judicial context was not absolutely immune).

2. We also note that Mother does not point to any rule of law that prohibits an appointed guardian ad litem from seeking the assistance from another qualified person in the performance of his duties.

guardian ad litem were not absolutely immune, the fear of lawsuits would undermine the performance of those duties. *See id.* Furthermore, because guardians ad litem are bound to determine the child's best interests in a custody proceeding, ultimately the child would suffer if such decisions were influenced by the threat of litigation. *See id.* at 1156–57. Also, if the guardian ad litem had to defend an action each time he or she were sued for wrongdoing, time and energy would be diverted from the important role of protecting children, and few persons would be willing to accept such an appointment. *See id.* at 1157. In this context, absolute immunity is necessary.

¶ 13 The remaining issue is whether Wiens is also protected by judicial immunity in the absence of a specific order authorizing her to act as guardian ad litem. To begin, Mother arguably waived this matter on appeal by failing to object to Wiens' appearance as guardian ad litem at either the evidentiary hearing or at any other time during the custody proceedings. *See State v. Hughes,* 193 Ariz. 72, 85, 969 P.2d 1184, 1197 (1998) ("Failure to object waives an issue on appeal absent fundamental error.").[3] However, because we find that Wiens was protected by judicial immunity, we need not decide the issue of waiver. We note, though, that had Mother raised this matter during the custody proceedings, the trial court would have likely made a specific finding as to whether Wiens

was qualified and authorized to serve as Xanadu's guardian ad litem.

¶ 14 Although an order appointing Wiens as guardian ad litem would have been preferable, the lack of such an order is not fatal to her acting in that capacity. While the court did not explicitly appoint Wiens as guardian ad litem, it allowed her to appear on behalf of Xanadu. Thus, the trial court acquiesced in Wiens' assumption of that role. Moreover, the trial court's adoption of Wiens' recommendation indicates that her expertise aided the court in reaching its final decision. We therefore conclude that the trial court implicitly agreed to Wiens' participation, and that she is absolutely immune from Mother's claims.

## CONCLUSION

¶ 15 Because absolute immunity shields Defendants from Mother's claims, we affirm the trial court's dismissal of Mother's complaint and the court's denial of Mother's motion for reconsideration.

CONCURRING: JON W. THOMPSON and ANN A. SCOTT TIMMER, Judges.

---

**3.** Mother did not complain about Wiens' representation of Xanadu until two years after the evidentiary hearing.