96 P.3d 1084

**Lionel DESILVA, an individual, Plaintiff–Appellant,**

**v.**

**Thomas BAKER and Jane Doe Baker, husband and wife; Baker & Baker, an Arizona partnership, Defendants–Appellees.**

**No. 1 CA–CV 03–0700.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 7, 2004.

---

Blumberg & Associates by Bruce E. Blumberg, Phoenix, Attorneys for Plaintiff–Appellant.

Broening Oberg Woods Wilson & Cass, P.C. by Donald Wilson, Jr., Matthew L. Cates, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

KESSLER, Judge.

¶ 1 Lionel DeSilva ("DeSilva") appeals from the grant of summary judgment to his former lawyer, Thomas Baker ("Baker") of Baker & Baker, in a legal malpractice action. DeSilva, represented by Baker, had brought common-law tort and 42 U.S.C. § 1983 claims against probation officers and the Maricopa County Sheriff and employees of the Maricopa County Sheriff's Office (collectively, "MCSO") (the "underlying action"). The superior court dismissed the underlying action for lack of prosecution. DeSilva then filed this malpractice action against Baker. DeSilva contends questions of material fact precluded summary judgment in Baker's favor. For the reasons that follow, we agree in part that the trial court erred in granting summary judgment. We hold that probation officers are absolutely immune from liability for filing petitions to revoke probation status. Accordingly, summary judgment of the legal malpractice action based on the suit against the probation officers was correct because DeSilva could not have prevailed on that claim. However, DeSilva presented a genuine issue of material fact whether the MCSO could have been held liable under § 1983, thus precluding summary judgment on that aspect of the malpractice action. We remand for further proceedings on DeSilva's negligence claim against Baker for failure to prosecute the action against the MCSO.

## BACKGROUND

¶ 2 In 1993, DeSilva was convicted of driving while intoxicated and was placed on intensive probation. In 1995, his probation officers filed a petition seeking revocation of his probation. Pursuant to a bench warrant, DeSilva was arrested and placed in the Maricopa County jail. Although the court hearing on the petition to revoke probation had not been completed, the court ordered DeSilva released from jail on February 10, 1995. DeSilva was hospitalized from February 10 to 13 for an acute "Group A Streptococcal infection of his feet." The probation revocation petition was later dismissed.

¶ 3 DeSilva retained Baker to represent him in the suit against the probation officers and the MCSO; however, Baker and DeSilva did not memorialize their agreement in writing. In May and June 1995, Baker submitted notices of claims pursuant to Arizona Revised Statutes ("A.R.S.") section 12–821.01 (2003) but did not file a lawsuit until January 1997.

¶ 4 The complaint alleged the probation officers had filed a petition to revoke DeSilva's probation knowing that the petition's allegations were false and DeSilva was arrested based on the allegations. It also alleged that due to unsanitary jail conditions DeSilva contracted a blood infection and repeatedly requested medical attention. A nurse finally examined him but failed to recognize the severity of the infection or to offer treatment. This failure to provide care was alleged to have exacerbated his injury. The trial court sent its 150–day order to Baker, but Baker took no further action to prosecute the case. In April 1998, the court dismissed the complaint without prejudice for lack of prosecution.

¶ 5 In July 2001, DeSilva sued Baker for legal malpractice. DeSilva alleged Baker did not notify him of the dismissal and that Baker did not timely seek reinstatement. DeSilva claimed he did not learn of the dismissal until August 1999 and consequently was unable to refile the underlying action. His complaint against Baker alleged negligence, breach of contract and misrepresentation and/or wrongful concealment. Baker moved for summary judgment on the negligence claim, asserting that DeSilva could not establish that absent Baker's failure to prosecute the case, DeSilva would have prevailed in the underlying lawsuit. Baker contended: (1) the probation officers were absolutely immune from prosecution for conduct performed in the course of their official duties; and (2) DeSilva failed to offer evidence of a causal connection between the jail conditions and his infected feet that would have subjected the MCSO to liability.

¶ 6 Baker also moved for summary judgment on the breach of contract claim. He argued that he had never specifically promised to file suit by a certain date; thus the

contract claim was premised on nonperformance of a duty imposed by law, which is a tort. Without evidence of a specific promise, DeSilva could not sue for breach of contract.

¶ 7 DeSilva responded that some courts have held that probation officers are entitled only to qualified immunity, citing *Brown v. Lyford,* 243 F.3d 185 (5th Cir.2001); *Wilson v. Kelkhoff,* 86 F.3d 1438 (7th Cir.1996); and *Ray v. Pickett,* 734 F.2d 370 (8th Cir.1984). As to his allegations concerning the MCSO, DeSilva attached an affidavit from Dr. Timothy Kuberski stating that he had reviewed the medical records from DeSilva's hospitalization. Dr. Kuberski concluded that the infection had not been properly diagnosed and treated while DeSilva was in jail; that the infection would have been diagnosed by a medical doctor; and that with reasonable medical certainty DeSilva would not have required hospitalization had the infection been promptly treated. Finally, DeSilva argued that Baker should not benefit from his wrongful failure to have DeSilva sign a written contingent fee contract and thus the lack of such a contract should not have barred his breach of contract claim.

¶ 8 As to the negligence claim, the trial court held that probation officers are absolutely immune while carrying out their official duties. It also found that DeSilva failed to establish with expert evidence that his infected feet were caused by unsanitary jail conditions. Thus, DeSilva could not have prevailed on his negligence claims against the probation officers or the MCSO. Citing *Collins v. Miller & Miller, Ltd.,* 189 Ariz. 387, 943 P.2d 747 (App.1996), the trial court also granted Baker summary judgment on the contract claim because there was no evidence of a specific promise by Baker. Accordingly, the trial court concluded Baker was entitled to summary judgment because DeSilva could not prove that any harm resulted from Baker's negligent handling of the underlying action.

¶ 9 DeSilva unsuccessfully moved for reconsideration.[1] After the parties agreed to dismiss the remaining misrepresenta-

tion/wrongful concealment count, the court entered judgment in favor of Baker, dismissed DeSilva's complaint and awarded costs to Baker. This appeal followed. We have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9 and A.R.S. § 12–2101(B) (2003).

## DISCUSSION

¶ 10 On appeal from a summary judgment, we view the evidence in a light most favorable to the party against whom judgment was granted. *Woerth v. City of Flagstaff,* 167 Ariz. 412, 416, 808 P.2d 297, 301 (App.1990). We independently determine whether questions of material fact exist and whether the superior court properly applied the law. *Gonzalez v. Satrustegui,* 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App.1993).

### A. NEGLIGENCE

¶ 11 "To recover compensatory damages in a legal malpractice action the plaintiff must prove that but for the attorney's negligence, the prosecution ... of the original action would have been successful." *Hyatt Regency Phoenix Hotel Co., v. Winston & Strawn,* 184 Ariz. 120, 131, 907 P.2d 506, 517 (App.1995) (citing *Asphalt Eng'r, Inc., v. Galusha,* 160 Ariz. 134, 136–37, 770 P.2d 1180, 1182–83 (App.1989)). In *Tennen v. Lane,* 149 Ariz. 94, 97, 716 P.2d 1031, 1034 (App. 1985), we reversed a directed verdict in a legal malpractice action because the plaintiff's evidence created a genuine question of material fact on whether the attorney's negligence proximately caused her damages. We also stated that proximate cause is a jury question unless reasonable persons could not differ on that issue. *Id.* (citing *Markowitz v. Ariz. Parks Bd.,* 146 Ariz. 352, 358, 706 P.2d 364, 370 (1985)).

### 1. The Probation Officers Were Entitled to Absolute Immunity.

¶ 12 DeSilva contends that in the underlying action the probation officers would have had to assert and prevail upon the

---

1. DeSilva pointed out that the failure to treat his feet exacerbated the infection and violated his

Eighth and Fourteenth Amendment rights.

affirmative defense of absolute immunity. He argues Baker bore that same burden in the legal malpractice case. Baker argues that because DeSilva cannot show that a reasonable jury or judge would have found in his favor in the underlying lawsuit, DeSilva cannot establish a causal link between Baker's negligence and any harm suffered by dismissal of that case.

¶ 13 We need not decide who had the burden of proof to show whether the probation officers were entitled to absolute immunity because there is no factual dispute about what the probation officers had done. Since the issue of absolute immunity was a question of law in the underlying action, it remained a question of law for the court to decide in the malpractice action. *See Molever v. Roush,* 152 Ariz. 367, 375, 732 P.2d 1105, 1113 (App.1986) ("[i]ssues resolved by the finder of fact, whether judge or jury, during the underlying action are likewise resolved by the finder of fact in the subsequent malpractice action; issues of law resolved by the court in the underlying action are likewise resolved by the court in the subsequent malpractice action."); *Widoff v. Wiens,* 202 Ariz. 383, 385, ¶ 8, 45 P.3d 1232, 1234 (App.

2002) (existence of judicial immunity is question of law subject to de novo review).

¶ 14 DeSilva's complaint alleged that his probation officers filed with the superior court a petition to revoke probation, that the probation officers knew the allegations of misconduct were false, and that because of the allegations the court wrongfully issued an arrest warrant.[2] The conduct at issue was the probation officers' filing of a petition to revoke probation containing allegedly false information. No Arizona or Ninth Circuit case has addressed whether this specific type of conduct qualifies for absolute judicial immunity.[3]

¶ 15 To decide this immunity issue, we use a functional approach.[4] "In determining whether an officer falls within the scope of absolute judicial immunity, the courts have adopted a 'functional approach' ... that turns on the nature of the responsibilities of the officer and the integrity and independence of his office." *Demoran v. Witt,* 781 F.2d 155, 156 (9th Cir.1985) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 810, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). This

2. In his opening brief, DeSilva cites a number of specific allegations made in the statement of claim sent to the County, but not in the complaint. These allegations included that the officers conspired to: falsify information; create false documents to support the petition to revoke; require community service be performed in a bar; and oppose his release on summons status pending the violation hearing. He argues that these actions are not intrinsic to the judicial process and not entitled to immunity. The notice of claim was included as part of the summary judgment papers in the malpractice action. We disagree with DeSilva as to the import of those additional alleged acts. In the statement of claim, the allegations of misconduct which supposedly caused DeSilva harm related to the filing of the probation revocation petition.

3. We did not reach this question in *McCleaf v. State,* 190 Ariz. 167, 170–71, 945 P.2d 1298, 1301–02 (App.1997).

4. We reject DeSilva's claim that probation officers cannot be awarded absolute immunity because such officers did not exist in 1871 when Congress enacted § 1983. In *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 435–36, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993), court reporters argued that although they did not exist in 1871,

they should enjoy the same immunity accorded to judges. The Supreme Court noted that judicial immunity had been extended to non-judges only if the official exercised judgment in a functionally equivalent way. Although court reporters played an important part in the modern legal process, they had no discretion in executing their duties and were not entitled to immunity. In *Buckley v. Fitzsimmons,* 509 U.S. 259, 268–69, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), the Supreme Court conceded that it had accorded immunity to some officials whose "special functions" were similar to functions that were immune in 1871. But, to determine whether particular conduct fits either under the common law absolute immunity or qualified immunity, the Court applied a "functional approach" based on "the nature of the function performed." *Id.* at 269, 113 S.Ct. 2606 (quoting *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)). The Court found no absolute immunity for a prosecutor when he acted as an investigator or administrator. *Id.* at 273–74, 113 S.Ct. 2606. Therefore, the existence of a particular position or task in 1871 is not determinative; rather, a court examines the function performed by the government officer in light of the public policy behind immunity. In any event, judicial immunity predates 1871 and immunity for probation officers in this case is an extension of that immunity.

approach examines the nature of the functions entrusted to the official and whether the possibility of exposure to civil liability would adversely affect the exercise of those functions. *Forrester*, 484 U.S. at 224, 108 S.Ct. 538; *accord Kalina v. Fletcher*, 522 U.S. 118, 126–28, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (applying functional test).

¶ 16 Applying the functional test, we hold that a probation officer's duty to prepare and file the necessary papers with the court to revoke probation entitles him to absolute immunity for that specific conduct. Such functions are similar to the duties of a judge acting in his or her official capacity.

¶ 17 Our supreme court has held that judicial immunity may be extended beyond judges to those whose functions are intimately related to the judicial process. *Acevedo v. Pima County Adult Prob. Dep't.*, 142 Ariz. 319, 321, 690 P.2d 38, 40 (1984).[5] In *Acevedo*, the issue was whether probation officers were immune for negligent supervision of probationers. *Id.* at 320, 690 P.2d at 39. The Arizona Supreme Court held administrative tasks are not integral to the judicial process and *are not "necessary to carry out and enforce the conditions of probation imposed by the court"* so that probation officers were not immune from liability for performing those tasks. *Id.* at 322, 690 P.2d at 41 (emphasis added).[6] However, in dictum, the court held that probation officers are absolutely immune for alleged civil rights violations in connection with the *preparation and submission of pre-sentence reports* because the reports are an "integral part of the sentencing process." *Id.*

¶ 18 This Court has extended absolute immunity to guardians ad litem and to court-appointed psychologists when they are assisting a judicial officer in a judicial function. Guardians ad litem assist the court in performing its judicial duties. Without immunity such guardians might hesitate to accept appointment or allow fear of litigation to influence their recommendations. *Widoff*, 202 Ariz. at 386, ¶¶ 10–11, 45 P.3d at 1235. Similarly, psychologists who perform a court-ordered task that is "closely related to the judicial process" and that impacts a court decision are entitled to absolute immunity. *Lavit v.Super. Ct.*, 173 Ariz. 96, 100, 839 P.2d 1141, 1145 (App.1992).

¶ 19 The Ninth Circuit also has held that probation officers are absolutely immune in § 1983 actions when writing and submitting presentence reports because the officers perform a quasi-judicial function that merits quasi-judicial and absolute immunity. *Burkes v. Callion*, 433 F.2d 318, 319 (9th Cir.1970). This immunity attaches even if the probation officer is alleged to have knowingly falsified a presentence report that resulted in the court imposing a longer sentence. *Demoran*, 781 F.2d at 156. In the latter case, the court applied its "functional approach" to immunity, reexamining the issue in light of the United States Supreme Court decision withholding absolute immunity.[7] *Id.* at 157. The Ninth Circuit concluded that absolute immunity still applied because probation officers, when preparing presentence reports, act as an arm of the judge and play an integral part in the judicial process. *Id.* The court also stated that the officers' duties require impartial investigation and reporting. The possibility of liability would "seriously erode" the officers' ability to fulfill their duties. *Id.* Moreover, "a plethora of procedural safeguards surround the filing of a presentence report." *Id.* at 158. Thus, even "[a]llegations of malice or bad faith in the execution of the officer's duties are insufficient to sustain the complaint when the officer possesses absolute judicial immunity." *Id.*

5. This extension of judicial immunity to quasi-judicial officers is consistent with federal law applying absolute immunity principles. 2 Ivan E. Bodensteiner & Rosalie Berger Levinson, *State & Local Government Civil Rights Liability* (2000) § 1A:03 ("Bodensteiner").

6. Accordingly, the court declined to follow federal courts that had extended qualified immunity to probation officers when performing "administrative, supervisory, or investigative" tasks. *Id.* (citing *Galvan v. Garmon*, 710 F.2d 214 (5th Cir. 1983), and *Ray*, 734 F.2d 370).

7. *Cleavinger v. Saxner*, 474 U.S. 193, 203–06, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985).

¶ 20 The Tenth Circuit came to the same conclusion in *Tripati v. I.N.S.*, 784 F.2d 345, 347 (10th Cir.1986). The court held that decisions on pretrial release and a proper sentence "are important parts of the judicial process" and that probation officers "perform critical roles." *Id.* at 348. Further, the officer is not an investigator for the prosecution but acts at the court's direction and for its benefit. When "the challenged activities of a federal probation officer are intimately associated with the judicial phase of the criminal process, he or she is absolutely immune from a civil suit for damages." *Id.*

¶ 21 Accordingly, probation officers are absolutely immune from liability in preparing presentence reports. Our holding is consistent with *Acevedo*, which suggests that if filing a petition to revoke were "necessary to carry out and enforce the conditions of probation imposed by the court" a probation officer would be entitled to absolute immunity. 142 Ariz. at 322, 690 P.2d at 41.

¶ 22 Applying the above analysis, probation officers are entitled to absolute immunity when they act as an arm of the court in filing a probation revocation petition and in enforcing the terms of probation by monitoring a probationer's compliance with those terms. By statute, a probation officer shall "[e]xercise general supervision and observation over persons under suspended sentence, subject to control and direction by the court." A.R.S. § 12–253(2) (2003). An officer also shall "[s]erve warrants, make arrests and bring persons before the court ...; [o]btain and assemble information concerning the conduct of persons placed under suspended sentence and report the information to the court; and [b]ring defaulting probationers into court when in his judgment the conduct of the probationer justifies revocation." A.R.S. § 12–253(3), (6), (7).

¶ 23 The relationship between the probation officers' investigating/reporting function and the judge's sentencing function supports absolute immunity. The officers' on-going supervision of probationers to ensure execution of court orders, as well as their duty to investigate and report violations to the court itself, are on behalf of and in aid of the court's judicial function. In addition, probation officers are a well-recognized part of the judicial department. *Broomfield v. Maricopa County*, 112 Ariz. 565, 568, 544 P.2d 1080, 1083 (1975); *State v. Pima County Adult Prob. Dep't*, 147 Ariz. 146, 148, 708 P.2d 1337, 1339 (App.1985).[8]

¶ 24 In exercising their discretion to file revocation reports, probation officers must be permitted to engage in "principled and fearless decision-making." *Acevedo*, 142 Ariz. at 321, 690 P.2d at 40. They are expected to exercise honest judgment; fear of either civil liability or of the burden of defending litigation may significantly deter frank pursuit of the truth. *Id.; see also Lavit*, 173 Ariz. at 99, 839 P.2d at 1144 (court-appointed psychologist awarded absolute judicial immunity to protect objectivity and independence). Absolute immunity promotes these public policies.

¶ 25 We find further support for immunity in the decisions of at least two other federal courts. In rejecting a claim that filing a petition to revoke probation exceeded the officers' authority, the Tenth Circuit reiterated that the continuing relationship between officers and probationers, intended to ensure compliance with court-ordered conditions, demands the officers play an investigative and supervisory role. *United States v. Davis*, 151 F.3d 1304, 1306 (10th Cir.1998). Accordingly, the officers are entitled to absolute immunity in performance of "judicially-related functions." *Id.* In *Schiff v. Dorsey*, 877 F.Supp. 73 (D.Conn.1994), the court held that probation officers are absolutely immune for initiating revocation because trial courts rely on their "frank, unfiltered reports" in monitoring compliance with court orders. *Id.* at

---

8. We note that the probation officers' decision in filing petitions to revoke probation can also be analogized to a prosecutor's decision to institute or maintain a legal action. Such a decision is entitled to absolute immunity even if the prosecutor knows the charge or claim is baseless. *State v. Super. Ct. (Cates)*, 186 Ariz. 294, 298, 921 P.2d 697, 701 (App.1996); *Bodensteiner* § 1A:04 (col-

lecting cases). An exception seems to be where the prosecutor acts as the complaining witness and, as such, presents false information to the court. *Kalina*, 522 U.S. at 129–31, 118 S.Ct. 502. In such a case, the prosecutor acting as a complaining witness is only entitled to qualified immunity. *Id.*

78. The duty to relay information requires "just as much frankness and confidentiality" as the presentence phase, and when the officers are insulated from political influence and the probationer may contest the charges, produce witnesses, and be represented by counsel, sufficient safeguards protect against wrongful deprivations of liberty. *Id.* at 78–79. "[T]he ... filing of a petition ... merely sets in motion a complex adversarial process presided over by a neutral, independent decision-maker, with safeguards that are just as extensive as in the presentence context." [9] *Id.* at 79.

██ ¶ 26 Consequently, the trial court did not err in finding absolute immunity would bar suit against a probation officer filing a petition to revoke probation. The probation officers in the underlying lawsuit would have been absolutely immune from liability and therefore the trial court properly granted summary judgment to Baker on this aspect of the negligence action.[10]

### 2. Claims against the Sheriff and Sheriff's Office[11]

██ ¶ 27 In order to state a claim under § 1983 DeSilva had to assert facts from which a reasonable jury could conclude that state officials acted with deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 105–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (in a custodial situation where time for deliberation is available, a deliberate indifference to serious medical needs of prisoner creates a cognizable claim under § 1983); *Weatherford v. State of Arizona*, 206 Ariz. 529, 537, ¶¶ 26, 28, 81 P.3d 320, 328 (2003) (applying deliberate indifference standard in foster care context). DeSilva's complaint in the underlying action alleged that while incarcerated, he contracted a blood disease from unsanitary conditions in jail, that jail officials breached their duty to provide sanitary conditions and their duty to provide prompt medical treatment and that failure to treat the infection greatly exacerbated DeSilva's injuries. The trial court failed to consider this last contention in granting summary judgment to Baker. Its minute entry concluded DeSilva lacked evidence to prove that the unsanitary conditions caused the infection. The court did not address the claim that, regardless of cause, once he had an infection DeSilva was entitled to treatment and that the MCSO's

9. We recognize that the federal courts are divided on whether absolute immunity applies to probation officers when they seek to revoke a probationer's status. Thus, in *Ray*, 734 F.2d at 371, the Eighth Circuit held that a probation officer is not entitled to absolute immunity after being accused of intentionally falsifying a report that caused the parole commission to issue a parole violator's warrant. However, the officer's duty there was distinctly different from the role of an Arizona probation officer. Although the officer's role in *Ray* was to report a violation, the report merely triggered inquiry by another officer. The reporting officer did not decide whether to initiate revocation proceedings and was neither judge nor prosecutor. *Id.* at 372–73. Also, unlike an officer who prepares presentence reports, the officer in *Ray* did not work closely with the court and his function was not "intimately associated with the judicial phase." *Id.* at 373.

Similarly, the Second Circuit concluded that a parole officer who did not make "an adjudicative decision to revoke" parole but only recommended to his superior that an arrest warrant be issued, was not entitled to absolute immunity. *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998). The officer's actions "were not performed under judicial direction" and took place before the judicial proceedings to revoke had begun. *Id.* at 112. *See also Wilson*, 86 F.3d at 1445–46 (probation officer's decision to file violation report and notice of charges is not adjudicative if it does not require independent decision-making).

10. Such immunity does not leave probationers without any protection. There are "a plethora of procedural safeguards [which] surround" the revocation process and protect a probationer's civil rights. *Demoran*, 781 F.2d at 158. If an officer has reasonable cause to believe that a probationer has violated a condition, the officer may petition the court to revoke and the court may issue an arrest warrant or a summons commanding the probationer to appear for a hearing. Ariz. R.Crim. P. 27.5. However, the probationer must be advised of the alleged violations at arraignment. He also has the rights to counsel, to be present, to offer evidence, and to cross-examine witnesses at a violation hearing. Rules 27.6, 27.7(a)(2), (b)(3).

11. The parties have not briefed and we do not address whether the Sheriff's Office or Maricopa County would have been a proper defendant in addition to any individual employees of the Sheriff's Office. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1185–86 (9th Cir.2002).

denial of treatment caused the infection to worsen.

¶ 28 On appeal, DeSilva argues that Dr. Kuberski's affidavit adequately established that his injury was exacerbated by denial of medical care and that this evidence on causation should have barred summary judgment in Baker's favor. The affidavit stated that Kuberski had reviewed DeSilva's medical records and understood DeSilva was not seen or treated by a physician while in jail. Kuberski also stated that DeSilva's infection would not have required hospitalization if prompt and proper treatment had been given: "I understand that Mr. DeSilva was not seen or treated by a licensed physician or doctor of osteopathy while incarcerated at the Maricopa County Jail" and had the infection been seen by a doctor he "would have been able to diagnose and treat properly at its inception."

¶ 29 Baker responds that Kuberski's affidavit is silent about the cause of the infection or when it began. The cause and time of inception are irrelevant, however, to whether the MCSO, once symptoms of the infection were evident, failed to provide treatment so that hospitalization would not have been needed.

¶ 30 DeSilva presented evidence to support the allegation that the denial of medical treatment exacerbated the infection so that upon release from jail he required immediate hospitalization. Whether the MCSO acted with deliberate indifference and proximately caused this exacerbation is a question of material fact that prevents summary judgment. Proximate cause is usually a question of fact for the jury. *Tennen,* 149 Ariz. at 97, 716 P.2d at 1034. On remand, the fact finder in the malpractice action must resolve this issue. *See Phillips v. Clancy,* 152 Ariz. 415, 421, 733 P.2d 300, 306 (App.1986) (jury in malpractice action decides fact question that would have existed in underlying lawsuit). We reverse summary judgment in Baker's favor on this aspect of the malpractice action.

## B. BREACH OF CONTRACT

¶ 31 In addition to alleging that Baker was negligent, DeSilva's complaint also alleged that he and Baker had entered into a contract under which Baker expressly promised to diligently prosecute the case and not to terminate representation without consulting DeSilva. DeSilva asserted that by failing to prevent dismissal for lack of prosecution, Baker breached the express and implied conditions of the unwritten contract for legal services.

¶ 32 A malpractice action may be founded on contract if "the duty breached is not imposed by law, but is a duty created by the contractual relationship, and would not exist 'but for' the contract." *Resolution Trust Corp. v. Western Tech., Inc.,* 179 Ariz. 195, 199, 877 P.2d 294, 298 (App.1994) (quoting *Barmat v. John and Jane Doe Partners A–D,* 155 Ariz. 519, 523–24, 747 P.2d 1218, 1222–23 (1987)). However, without "some special contractual agreement or undertaking ... a professional malpractice action does not 'arise' from contract, but rather from tort." *Id.* Thus, in *Resolution Trust Corp.,* we distinguished *Galusha,* 160 Ariz. at 138, 770 P.2d at 1184, in which "the gravamen of the litigation" was that the attorney specifically promised to file mechanic's liens and foreclosure suits but failed to do.

¶ 33 DeSilva argues that Baker breached an express contract or specific promise so the case can "sound in contract and then only to the extent the claim is premised on the non-performance of that promise." *Collins,* 189 Ariz. at 395, 943 P.2d at 758. We reject DeSilva's argument because there is no evidence Baker made any specific promise that he breached.

¶ 34 Finally, we reject DeSilva's contention that Baker's total failure to perform amounts to a breach of contract. The record shows that Baker did file a complaint and apparently performed sufficiently such that the case was not dismissed for fourteen months. Further, the record reveals no express promise. *See Barmat,* 155 Ariz. at 523, 747 P.2d at 1222. As the court held in *Barmat,* when an implied contract places the parties in a relationship from which the law imposes certain duties, the gravamen of a later action for breach of the agreement is in tort, not contract. *Id.*

¶ 35 Therefore, the trial court did not err in granting summary judgment to Baker on DeSilva's breach of contract claim. DeSilva could not have prevailed on such a claim premised on Baker's failure to diligently prosecute the lawsuit against the probation officers and the MCSO.

## CONCLUSION

¶ 36 We affirm the grant of summary judgment to Baker on DeSilva's claim for breach of contract and claim for negligence in prosecuting his case against the probation officers. However, the trial court erred in concluding as a matter of law that DeSilva could not have prevailed against the MCSO on his claim that it denied DeSilva medical treatment and that due to failure to treat his infection he required hospitalization. Accordingly, we affirm in part, reverse in part and remand for further proceedings in the trial court.

¶ 37 Baker requests an award of attorney's fees incurred in this appeal pursuant to A.R.S. § 12–341.01 but without further explanation. Exercising our discretion, we deny that request.

CONCURRING: G. MURRAY SNOW, Presiding Judge, and ROBERT M. BRUTINEL, Judge Pro Tempore.*

* The Honorable Robert M. Brutinel, Judge *Pro Tempore,* was authorized by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this appeal pursuant to the Arizona Constitution, Article VI, § 3 and A.R.S. §§ 12–145 through 147.