IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO
―――――――――――

BRENDEN KAPUSTA,
*Plaintiff/Appellant*,

*v.*

DR. BRYCE BENNETT, OASIS PSYCHOLOGICAL SERVICES, AND BIANCA BOLING,
*Defendants/Appellees*.

No. 2 CA-CV 2024-0317
Filed January 30, 2026

―――――――――――

Appeal from the Superior Court in Maricopa County
No. CV2023054647
The Honorable Michael Gordon, Judge

**REVERSED AND REMANDED**

―――――――――――

COUNSEL

Brenden Kapusta, Aurora, Oregon
*In Propria Persona*

Klein Thomas Lee & Fresard
By Brandon L. Boxler, Richmond, Virginia

and

By Paul R. Lee and Elsa Paulina Rivera Ramirez, Phoenix
*Counsel for Defendants/Appellees Dr. Bryce Bennett and Oasis Psychological Services*

Gordon Rees Scully Mansukhani LLP, Phoenix
By Charles T. Carson and J. William Cook
*Counsel for Defendant/Appellee Bianca Boling*

## OPINION

Chief Judge Staring authored the opinion of the Court, in which Presiding Judge Brearcliffe concurred and Judge Eckerstrom dissented.

S T A R I N G, Chief Judge:

¶1 Brenden Kapusta appeals from the superior court's orders dismissing his claims against Dr. Bryce Bennet, Oasis Psychological Services, and Bianca Boling (collectively, "the Oasis Defendants").[1] For the reasons that follow, we reverse and remand the matter for further proceedings consistent with this opinion.

### Factual and Procedural Background

¶2 In 2014, Kapusta pled guilty to attempted voyeurism. The superior court suspended the imposition of sentence and placed him on probation for ten years. The conditions of Kapusta's probation required him to "attend, actively participate in, and remain in sex offender treatment at the discretion of" the probation department.

¶3 After several years of treatment with another provider, the probation department referred Kapusta to Oasis Psychological Services, where he began treatment with a student clinician, Boling, under the supervision of Dr. Bennett. Oasis discharged Kapusta after approximately seven months. The discharge summary stated that he had "display[ed] minimal commitment to the treatment process," had violated Oasis's "group payment policy," had been "disrespectful" towards "staff and therapists," and had disobeyed Oasis's "Group Expectations and Program Description policy."

¶4 Immediately after Oasis discharged Kapusta, the probation department filed a petition to revoke his probation, noting, among other things, that he had been "unsuccessfully discharged from sex offender treatment at Oasis" and had "chose[n] to consume alcohol" in violation of

---

[1]Kapusta also appealed the dismissal of his claims against various employees of the Maricopa County Adult Probation Department. Pursuant to stipulation, Kapusta's claims against those defendants were dismissed with prejudice in February 2025. Accordingly, we consider only the claims against the Oasis Defendants.

the conditions of his probation. At a revocation hearing, Kapusta admitted he had consumed alcohol. Based on this admission, the superior court found Kapusta had violated the terms of his probation. At the disposition hearing, the court again suspended the imposition of sentence and reinstated probation, extending it for approximately six months. The court also dismissed the remaining allegations in the petition to revoke.

¶5            Nearly two years later, Kapusta filed this lawsuit, asserting a number of claims against Oasis, as well as others. Kapusta alleged that Oasis had wrongfully discharged him and that the superior court had wrongfully extended the term of his probation by relying on reports containing deceptive and defamatory statements. Pursuant to Rule 12(b)(6), Ariz. R. Civ. P., all of the defendants moved to dismiss Kapusta's claims against them, arguing, in part, that they were shielded by absolute judicial immunity. The Oasis Defendants additionally claimed that the statute of limitations barred Kapusta's negligence-based claims against them. After hearing argument, the superior court concluded that the defendants were "entitled to absolute immunity" and granted their respective motions, but it declined to address additional arguments, including whether Kapusta had complied with all applicable statutes of limitation. The court dismissed the action in its entirety, and this appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

## Discussion

## I.   Judicial Immunity

¶6            Kapusta argues the superior court erred in granting the Oasis Defendants' motions to dismiss on the basis of absolute judicial immunity. We review de novo the dismissal of a claim under Rule 12(b)(6). *Coleman v. City of Mesa*, 230 Ariz. 352, ¶ 7 (2012); *see also Brittner v. Lanzilotta*, 246 Ariz. 294, ¶ 6 (App. 2019) (whether judicial immunity applies is question of law reviewed de novo). In doing so, we "must assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts." *Coleman*, 230 Ariz. 352, ¶ 9. Dismissal is inappropriate unless, as a matter of law, the plaintiff "would not be entitled to relief under any interpretation of the facts susceptible of proof." *Fid. Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, ¶ 4 (1998). As a general policy matter, Rule 12(b)(6) motions to dismiss are disfavored under Arizona law. *See State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 594 (1983).

¶7            Kapusta argues the Oasis Defendants are not entitled to judicial immunity because they "were not advising the Court nor were they

acting pursuant to any Court order" when the allegedly defamatory discharge report was written. (Emphasis omitted.) We agree.

¶8            "Judicial immunity protects judges from civil liability for judicial acts performed in the exercise of their judicial functions." *Brittner*, 246 Ariz. 294, ¶ 6. Over the years, judicial immunity has also been extended to certain officers "who perform functions integral to the judicial process." *Lavit v. Superior Court*, 173 Ariz. 96, 99, 101 (App. 1992) (psychologist aiding court in determining child custody entitled to absolute immunity); *see also Brittner*, 246 Ariz. 294, ¶ 7 (therapist appointed by court as advisor regarding child custody entitled to judicial immunity); *DeSilva v. Baker*, 208 Ariz. 597, ¶ 16 (App. 2004) (probation officers filing probation revocation petitions entitled to absolute immunity). "The consistent reasoning in these cases is that each non-judicial officer performed a function, pursuant to a court directive, which was related to the judicial process. This application of judicial immunity . . . would not exist except for the direct connection with the court." *Acevedo v. Pima Cnty. Adult Prob. Dep't*, 142 Ariz. 319, 321 (1984). Importantly, "governmental liability is the rule in Arizona and immunity is the exception." *Doe ex rel. Doe v. State*, 200 Ariz. 174, ¶ 4 (2001). Therefore, the reach of judicial immunity is extremely limited, and courts bestow immunity with hesitance. *See id.*; *Grimm v. Ariz. Bd. of Pardons & Paroles*, 115 Ariz. 260, 265 (1977).

¶9            Here, there is no direct connection between the defendants and the superior court. *See Acevedo*, 142 Ariz. at 321 ("[J]udicial immunity may fairly be described as derivative in that the immunity would not exist except for the direct connection with the court."). The court played no role in the selection of Oasis and did not require Oasis to provide any specific treatment or information to it. The court merely ordered Kapusta to attend sex-offender treatment "at the discretion of" the probation department. Thus, the court did not even directly order Kapusta to attend treatment. The probation department exercised its discretion, initially referring Kapusta to one treatment program and, several years later, requiring that he attend Oasis. Notably, in *Acevedo*, a case that arose from allegations of negligence in supervising a sex offender on probation, our supreme court concluded that probation officers do not have immunity for supervisory and administrative acts concerning probationers, highlighting the limited nature of judicial immunity. *Id.* at 320, 322; *see also Garibay v. Johnson*, 259 Ariz. 248, ¶ 16 (2025) ("We distill from our jurisprudence the principle that common law judicial immunity applies to court officers, employees, and agents who 'assist the court in the judicial process' by carrying out court orders or otherwise serving an integral part of the judicial process." (quoting *Acevedo*, 142 Ariz. at 322)). *Acevedo* and *Garibay*, along with the fact

that immunity is disfavored under Arizona law, compel the conclusion that the Oasis Defendants do not enjoy judicial immunity.

¶10        The Oasis Defendants nonetheless argue that the lack of a direct connection has no impact on the applicability of judicial immunity because probation officers are members of the judicial branch, "[s]o either way, Oasis served and reported to the judiciary." As noted, this argument fails in light of *Acevedo*. Further, a connection to a member of the judicial branch who reports to the court cannot be equated with a direct connection to the court itself. *See* A.R.S. § 12-253 (adult probation officers exercise supervision over probationers, subject to control and direction by the court); *see also Griggs v. Oasis Adoption Servs., Inc.*, 241 Ariz. 71, ¶ 20 (App. 2016) ("A generalized connection to the judicial process does not confer immunity for all activities."); *Acevedo*, 142 Ariz. at 322 (no immunity for negligent supervision of probationers).

¶11        The Oasis Defendants additionally argue that *Lavit* and *Brittner* are analogous to the instant case, which compels a finding in their favor. In *Lavit*, we determined that a psychologist, chosen by the parties and directly ordered by the court to "serve as an expert for the [trial] court" in determining child custody, was entitled to judicial immunity. 173 Ariz. at 100-01. We reasoned that "his evaluations and recommendations aided the trial court" and that "his services were performed pursuant to a court order," elevating the psychologist's "role to that of a court-appointed psychologist." *Id.* Similarly, in *Brittner*, this court concluded that a court-appointed therapist was entitled to judicial immunity because she was appointed primarily to "make recommendations to assist in a custody determination," and the trial "court ultimately relied on" those recommendations. 246 Ariz. 294, ¶ 7. We further reasoned that the therapeutic services she had provided—which generally would not be protected by immunity—were merely "incidental to the court's purpose." *Id.* ¶¶ 7, 9.

¶12        *Lavit* and *Brittner* are distinguishable from this case. First, unlike the trial courts in *Lavit* and *Brittner*, the superior court here neither appointed the defendants nor requested their recommendations. As discussed above, the court ordered that the probation department would have the discretion to require Kapusta to attend sex-offender treatment, and it was the probation department that referred Kapusta to Oasis and that provided information about his discharge to the court.

¶13        Next, defendant Boling contends that, as in *DeSilva*, the defendants are entitled to judicial immunity because their conduct, as it relates to the preparation of the discharge summary, is closely related to the

judicial process. In *DeSilva*, the court determined that probation officers are entitled to absolute immunity when filing probation revocation petitions because doing so is "necessary to carry out and enforce the conditions of probation of the court." 208 Ariz. 597, ¶¶ 21-22. The court further reasoned that "probation officers are a well-recognized part of the judicial department" and that their statutory duties to supervise probationers are performed "on behalf of and in aid of the court's jurisdictional function." *Id.* ¶ 23. However, this rationale does not extend to the present matter because, unlike the probation officers in *DeSilva*, the defendants are not members of the judicial branch nor are they bound by statute to supervise probationers on behalf of the court. *See id.* ¶¶ 22-23, 26.

¶14 Finally, the Oasis Defendants contend that policy considerations support extending judicial immunity to the defendants. Quoting *Acevedo*, 142 Ariz. at 321, they argue that granting judicial immunity to the defendants would "further 'the underlying policy of judicial immunity'—namely, to safeguard 'principled and fearless decision-making.'" However, the defendants' conduct, insofar as it relates to drafting the allegedly defamatory discharge summary, did not involve any decision-making integral to the judicial process. Indeed, the discharge summary stated the reasons for Kapusta's discharge after the decision to discharge him had already been made. Thus, its drafting did not require anyone to exercise discretion or reach a conclusion. *See DeSilva*, 208 Ariz. 597, ¶¶ 23-24.

¶15 The Oasis Defendants also allege that their exposure to liability will discourage practitioners from accepting "the burdens of providing these court-ordered treatments." But we have no evidence that this phenomenon has occurred in other contexts in which immunity has been denied, and, on the record before us, we decline to depart from our precedent, including Arizona's strong preference for not granting immunity. *See, e.g.*, *Adams v. State*, 185 Ariz. 440, 447 (App. 1995) (denying immunity to state caseworkers for pre-adoption investigations and post-placement monitoring); *Acevedo*, 142 Ariz. at 322 (not "all the activities of a probation officer in supervising a probationer are entitled to immunity"). Accordingly, we reverse the superior court's conclusion that the Oasis Defendants were entitled to judicial immunity for their role in preparing the discharge summary provided to the probation department.

## II. Statute of Limitations

¶16 The Oasis Defendants argue, in the alternative, that we should "affirm the dismissal of the two negligence-based claims . . . because those claims are time-barred." Specifically, they claim that Kapusta should

have filed suit by June 2023—instead of December 4, 2023—because the two-year statute of limitations began to run when Oasis discharged him in June 2021. In reply, Kapusta contends that "[n]othing in the Verified Complaint, or the record as a whole, conclusively establishes that [he] discovered or should have discovered the alleged wrongdoing outside the limitations period."

**¶17** The statute of limitations for a negligence claim is two years. A.R.S. § 12-542. The statute begins to run when "the plaintiff knows or with reasonable diligence should know the facts underlying the cause." *Doe v. Roe*, 191 Ariz. 313, ¶ 29 (1998). "A plaintiff need not know *all* the facts underlying a cause of action" but "must at least possess a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury." *Id.* ¶ 32. Generally, when a claim accrued is a question of fact for the jury. *Satamian v. Great Divide Ins. Co.*, 257 Ariz. 163, ¶ 14 (2024).

**¶18** Below, the superior court declined to address the defendants' statute of limitations argument after dismissing Kapusta's claims on immunity grounds. And the fact that Oasis discharged Kapusta in June 2021 does not, on its own, establish that he knew or should have known the facts underlying the cause of action at that time. *See Doe*, 191 Ariz. 313, ¶ 29. As such, we remand the case to the superior court to determine whether Kapusta's claims were time-barred. *See Coulter v. Grant Thornton, LLP*, 241 Ariz. 440, ¶ 17 (App. 2017) (remanding to trial court to resolve factual question of when limitations period commenced).

## Disposition

**¶19** For the foregoing reasons, we reverse the decision of the superior court and remand for further proceedings consistent with this opinion.

E C K E R S T R O M, Judge, dissenting:

**¶20** "The purpose behind judicial immunity is to protect 'principled and fearless decision-making.'" *Widoff v. Wiens*, 202 Ariz. 383, ¶ 9 (App. 2002) (quoting *Rankin v. Howard*, 633 F.2d 844, 847 (9th Cir. 1980)). In practice, judges, and those performing integral judicial functions, must be able to perform their duties "without fear of the threat of litigation." *See id.* ¶ 12. Non-judicial actors are deemed to perform integral judicial functions when they act on behalf of the court "pursuant to a court directive, which was related to the judicial process." *Acevedo v. Pima Cnty. Adult Prob. Dep't*, 142 Ariz. 319, 321 (1984).

**¶21**        In essence, Kapusta maintains that the Oasis Defendants harmed him by authoring reports that caused the superior court judge to make adverse decisions about his probation.  In authoring those reports—and conducting the evaluations and treatment sessions underlying them—Oasis performed several integral judicial functions.  It provided an evaluation, thereby assisting the court in determining whether Kapusta needed treatment and whether that treatment could assist him.  It provided treatment allowing Kapusta to receive an opportunity for rehabilitation, thereby facilitating the court's traditional probationary goals of improving a probationer's life trajectory and reducing the risk of recidivism.  And, it provided reports containing a candid judgment about Kapusta's compliance with the evaluation and counseling regimen, thereby allowing the court to determine whether Kapusta had been abiding by his conditions of probation—crucial information relied upon by the court to vigilantly guard the public from future harm.  Because Kapusta's grievances relate exclusively to how the Oasis Defendants performed these judicial functions, each integral to the court's implementation and enforcement of its sentencing order, I cannot agree with my colleagues that the court erred in dismissing Kapusta's complaint.  *Id.* at 321-22 (judicial immunity should apply when non-judicial actor engages in integral judicial functions pursuant to court directive).

**¶22**        The majority reasons that the Oasis Defendants do not qualify for judicial immunity because they acted without "direct connection" to the superior court's orders.  In support of this premise, my colleagues emphasize that the court's sentencing order granted the probation office discretion whether to require Kapusta to participate in counseling.  The majority further observes that the court's sentencing order is silent as to the identity of any specific provider and even any requirement that a report be provided.

**¶23**        This reasoning overlooks that the probation department acted exclusively under the authority of the superior court's sentencing order when it required Kapusta to participate in counseling with Oasis.  That order directed Kapusta to "actively participate and cooperate in any program of counseling . . . as determined by [the Adult Probation Department (APD)]."  The order implicitly directed the probation department to assess whether Kapusta needed counseling to remain law-abiding.  Further, the court's order expressly contemplated and

facilitated the court's access to any reports on Kapusta's performance in any counseling ultimately required under the authority of the court's order.[2]

¶24 In short, the sentencing order delegated to the probation department the authority to act as a conduit for executing the superior court's orders as to Kapusta's counseling. Indeed, in the absence of the court's sentencing order, the probation department lacked any authority to direct Kapusta into counseling or any leverage to induce his compliance with it. When the Oasis Defendants carried out those directives, as communicated by the probation department, they engaged in functions integral to executing the court's orders. They acted, at the direction of the court's express delegates, in conformity with the intentions of the court as expressed by its sentencing order.

¶25 In determining whether non-judicial actors, such as the Oasis Defendants, are entitled to absolute immunity for facilitating the superior court's conditions on a claimant's probation, we should honor our supreme court's reasoning on that specific question. In *Acevedo*, the court clarified that non-judicial officers are "entitled to absolute protection from suit for actions which are necessary to carry out and enforce the conditions of probation imposed by the court." *See id.* at 322 (applying principle of judicial immunity to probation officers).[3] Kapusta's complaint focuses entirely on actions the Oasis Defendants took to execute and enforce the conditions of probation imposed on Kapusta. Thus, under both the public policy rationale for judicial immunity articulated in *Acevedo* and our supreme court's specific application of that rationale to the implementation

---

[2]The court's sentencing order required Kapusta to "sign any release or consent required by the APD so the APD can exchange information in relation to my treatment, behavior and activities."

[3]The majority opinion suggests the Oasis Defendants should not receive immunity for their actions to supervise and enforce probation conditions because they are neither officers of the court nor employees of a judicial officer. But, our supreme court has expressly declined to make that distinction in assessing immunity for non-judicial actors. *Acevedo*, 142 Ariz. at 322 ("Those officers, employees, *and agents* who assist the court in the judicial process are also entitled to absolute immunity.") (emphasis added); *see also Brittner v. Lanzilotta*, 246 Ariz. 294, ¶¶ 11-12 (App. 2019) (granting absolute immunity to therapist appointed to assist parents in child custody dispute).

of probation conditions, the Oasis Defendants should receive absolute immunity from such lawsuits. *See id.* at 321-22.

¶26       The inevitable result of the majority's contrary conclusion should give us pause. In deciding whether to provide services to our courts, the Oasis Defendants, and the host of other non-employee counselors who assist our courts, now must weigh the financial risks of defending lawsuits like Kapusta's. And, even if our courts remain able to secure providers under these circumstances, those providers will now face the potential threat of legal retaliation from each probationer who takes issue with the content of their reports or the quality of their counseling sessions. Such threats of litigation will predictably challenge a provider's resolve either to insist on substantial compliance with the counseling regimen or to provide uncompromising candor in their subsequent reports to the court.

¶27       For all the foregoing reasons, I respectfully dissent.[4]

---

[4]Because I would affirm the court's dismissal of the case on the ground that the Oasis Defendants are entitled to absolute immunity, I do not address the question of whether the action is also time-barred.