156 P.3d 423

**Angela BURK, Plaintiff–Appellant,**

v.

**The STATE of Arizona; Cathi Culek, Defendants–Appellees.**

**No. 1 CA–CV 06–0029.**

Court of Appeals of Arizona, Division 1, Department E.

March 6, 2007.

Review Denied Sept. 25, 2007.

Keith M. Knowlton, L.L.C. By Keith M. Knowlton, Mesa, Attorney for Plaintiff–Appellant.

Terry Goddard, Attorney General By Richard F. Albrecht, Assistant Attorney General, Phoenix, Attorney for Defendants–Appellees.

## OPINION

TIMMER, Presiding Judge.

¶ 1 Angela Burk's appeal from the superior court's dismissal of her negligence and 42 U.S.C. § 1983 (1996)[1] claims requires us to decide whether a court employee can successfully claim judicial immunity from a damages suit if that employee performs her function in a discriminatory manner. For the reasons that follow, we decide that the superior court correctly ruled that the employee is immune from Burk's suit. We therefore affirm.

## BACKGROUND[2]

■ ¶ 2 In 2004, while in the process of dissolving her marriage, Angela Burk asked the superior court in Maricopa County to modify the existing parenting schedule concerning the couple's minor daughter, S.L. Under the existing schedule, S.L. spent Sundays with her father and the remainder of the week with Burk, the primary custodial parent. Burk requested a visitation modification allowing S.L. to stay with her father from 6:00 p.m. Thursday through 6:00 p.m. Monday every other week. This proposal would give S.L. more time with her father while allowing her to spend two Sundays each month with Burk.

¶ 3 The superior court referred Burk's request to Cathi Culek, an employee of the court's conciliation services, for evaluation and report. *See* Ariz. Local R. Prac.Super.

Ct. (Maricopa) 6.11(c) (providing court may refer parenting-time issue to Conciliation Services, which will assess issue and make written report of assessment to court with or without recommendations). Culek prepared a report recommending that S.L.'s father become the primary custodial parent and that Burk be allowed only supervised visitation.[3] According to Burk, "the report was intentionally designed to assure that S.L. attended the Church of Jesus Christ of Latter Day Saints. Further, the report was designed to take visitation and parental control over S.L. from [Burk] because Culek objected to [Burk's] moral choices."

¶ 4 Burk reacted to Culek's report by asking the court for a second evaluation, and the court granted this request. Dr. Ralph Earle then evaluated Burk's request and issued a report opposing Culek's recommendations, advising the court to maintain Burk as the primary custodial parent and grant her modification request. The superior court adopted Dr. Earle's recommendations and rejected Culek's recommendations by modifying the parenting schedule in the manner proposed by Burk.

¶ 5 Burk subsequently sued Culek and the State of Arizona for gross negligence and negligence.[4] She additionally asserted claims under 42 U.S.C. § 1983 for violations of her First and Fourteenth Amendment rights to exercise religion freely. U.S. Const. amend. I & XIV. Culek and the State moved to dismiss the complaint pursuant to Arizona Rules of Civil Procedure ("Rule") 12(b)(6), and, among other arguments, asserted that the doctrine of judicial immunity barred Burk's claims. The court granted the defendants' motions, and this appeal fol-

---

1. We cite the current version of the applicable statutes because no revisions material to this decision have occurred.

2. In reviewing the dismissal of a complaint for failure to state a claim, we assume the truth of its allegations and give the plaintiff the benefit of all inferences arising from those allegations. *Botma v. Huser,* 202 Ariz. 14, 15, ¶ 2, 39 P.3d 538, 539 (App.2002).

3. The record before us does not contain a copy of Culek's report. Thus, we do not know what reasons, if any, Culek gave for her recommendations.

4. Burk also asserted claims against Maricopa County. The County moved to dismiss on the basis that it never employed Culek, and the court granted that motion. Burk does not appeal that ruling, and the County is not a party to this appeal.

lowed.[5]

■ ¶ 6 We review the court's dismissal of Burk's complaint de novo. *Fairway Constructors, Inc. v. Ahern,* 193 Ariz. 122, 124, ¶ 6, 970 P.2d 954, 956 (App.1998). We will uphold the dismissal only if Burk "could not be entitled to relief under any facts susceptible of proof under the claims stated." *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 186, 677 P.2d 1292, 1294 (1984), *rejected on other grounds by Gipson v. Kasey,* 496 Ariz. Adv. Rep. 41, 214 Ariz. 141, 150 P.3d 228 (2007).

## DISCUSSION

■ ¶ 7 The doctrine of judicial immunity states that judges are absolutely immune from damages lawsuits for their judicial acts,[6] "even when such acts are in excess of their jurisdiction or are alleged to have been done maliciously or corruptly." *Acevedo v. Pima County Adult Prob. Dep't,* 142 Ariz. 319, 321, 322, 690 P.2d 38, 40, 41 (1984). The primary purpose of the doctrine is to assure that judges will perform their functions independently and without fear of personal consequences. *Id.* Whether judicial immunity exists is a legal question for the court. *Lavit v. Superior Court,* 173 Ariz. 96, 99, 839 P.2d 1141, 1144 (App.1992).

■ ¶ 8 Judicial immunity is not limited to judges. Court officers, employees, and agents who perform functions "intimately related to" or that are "an integral part of the judicial process," are also protected by the doctrine. *Acevedo,* 142 Ariz. at 321, 690 P.2d at 40 (citations omitted). Thus, our courts have extended judicial immunity to guardians ad litem, court-appointed psychologists, and probation officers when they perform such functions. *Desilva v. Baker,* 208 Ariz. 597, 602, ¶¶ 16, 18, 96 P.3d 1084, 1089 (App.2004); *compare Acevedo,* 142 Ariz. at 322, 690 P.2d

at 41 (holding probation officer not immune from suit for actions taken contrary to court's directive). To determine when a non-judge is cloaked with judicial immunity, we examine the nature of the function entrusted to that person and the relationship of that function to the judicial process. *Acevedo,* 142 Ariz. at 321, 690 P.2d at 40; *Desilva,* 208 Ariz. at 601–02, ¶ 15, 96 P.3d at 1088–89. "[T]he applicability of judicial immunity to officers serving the judiciary is limited to those situations where the underlying policy of judicial immunity is served: principled and fearless decision-making by that officer." *Acevedo,* 142 Ariz. at 321, 690 P.2d at 40.

■ ¶ 9 Burk does not dispute that conciliation services personnel are cloaked with judicial immunity when performing evaluations for use by the court in ruling on requests for modification of child custody orders. Indeed, Burk would be hard-pressed to urge this argument. Evaluations ordered by a judge for use in ruling on custody issues are "intimately related to" the judicial process, and application of the doctrine promotes "principled and fearless decision-making" by evaluators. *Id.; see also Meyers v. Contra Costa County Dep't of Soc. Services,* 812 F.2d 1154, 1159 (9th Cir.1987) (concluding conciliation court personnel absolutely immune from damages suit alleging biased decision-making because defendants performed judicial function at direction of court); *Lavit,* 173 Ariz. at 101, 839 P.2d at 1146 (holding psychologist who performed evaluation of child custody issues pursuant to court directive entitled to absolute judicial immunity because report was an "integral part of the judicial process" and immunity served public interest). Rather, Burk contends that Culek and the State cannot enjoy such immunity in this case because (1) Culek acted outside the court's jurisdiction in performing the evaluation, (2) she exceeded the court-ordered directive, and (3) the court rejected

---

5. Burk does not contest dismissal of the § 1983 claim against the State. Dismissal was warranted because the State is not a "person" subject to suit for damages under § 1983. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

6. Judges are not immune from suit for performances of official acts that are not judicial acts.

*Acevedo v. Pima County Adult Prob. Dep't,* 142 Ariz. 319, 322, 690 P.2d 38, 41 (1984). A "judicial act" is a general function that is normally performed by a judge. *Mireles,* 502 U.S. at 12–13, 112 S.Ct. 286 (explaining that relevant inquiry concerns "nature" and "function" of act rather than act itself).

her report in making its ruling. We address each contention in turn.

### A. Jurisdiction

██ ¶ 10 In *Mireles*, 502 U.S. at 11–12, 112 S.Ct. 286, the United States Supreme Court stated that absolute judicial immunity for judges is overcome in two circumstances. Specifically, the doctrine is inapplicable when a judge is sued for nonjudicial actions or if contested judicial actions were "taken in the complete absence of all jurisdiction." *Id.* Burk seizes on the second exception and argues that the superior court lacked jurisdiction to discriminate against her on the basis of religion. It necessarily follows, Burk asserts, that Culek's allegedly discriminatory actions fell outside the court's jurisdiction, thereby overcoming the application of judicial immunity in this case.

██ ¶ 11 In our view, Burk confuses the concepts of absence of jurisdiction and excess of judicial authority. To support the principle that immunity does not apply to judicial actions taken in "the complete absence of all jurisdiction," the *Mireles* Court cited *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). *Mireles*, 502 U.S. at 11–12, 112 S.Ct. 286. In *Stump*, the Court explained that a judge acts in "absence of jurisdiction" only if that judge knows the court lacked subject-matter jurisdiction over the matter:

7. The *Stump* court illustrated the distinction between lack of jurisdiction and excess of jurisdiction as follows:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Stump*, 435 U.S. at 356–57 n. 7, 98 S.Ct. 1099 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 352, 20 L.Ed. 646 (1871)).

8. Our review of the case law reveals that courts sometimes use the term "jurisdiction" to refer to a court's authority to take certain actions rather than the court's subject-matter jurisdiction. *See, e.g., Acevedo*, 142 Ariz. at 321, 690 P.2d at 40 (stating judges immune even when judicial acts are "in excess of their jurisdiction"); *compare Stump*, 435 U.S. at 356–57 and n. 7, 98 S.Ct.

'A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter.[7] Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.'

435 U.S. at 356 n. 6, 98 S.Ct. 1099 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351–52, 20 L.Ed. 646 (1871)). In deciding whether a judge acted in "clear absence of all jurisdiction," the scope of jurisdiction must be broadly construed and assessed at the time of the challenged action. *Stump*, 435 U.S. at 356–57, 98 S.Ct. 1099. If the judge did not clearly act without subject-matter jurisdiction, judicial immunity applies even if the judge's action was in error, illegal, done maliciously, or was performed in excess of authority.[8] *Stump*, 435 U.S. at 356–57, 98 S.Ct. 1099.

1099 (holding judge immune for judicial acts that exceed authority and only loses immunity for judicial acts made in absence of subject-matter jurisdiction). Rather than perpetuate any confusion about the meaning of the absence-of-jurisdiction exception to judicial immunity, we use the term "jurisdiction" to mean "subject-matter jurisdiction," and we use the term "authority" to refer to the court's ability to take particular action. *See Boydston v. Strole Dev. Co.*, 193 Ariz. 47, 50, ¶ 9, 969 P.2d 653, 656 (1998) ("We have cautioned against the use of the word 'jurisdiction' beyond its core meaning."); *Taliaferro v. Taliaferro*, 186 Ariz. 221, 223, 921 P.2d 21, 23 (1996) (stating use of word "jurisdiction" to mean subject-matter jurisdiction distinct from use of word to mean authority of court to take particular action); *Marvin Johnson, P.C. v. Myers*, 184 Ariz. 98, 101–02, 907 P.2d 67, 70–71 (1995) (noting use of term "jurisdiction" to refer to scope of probate proceedings should not be confused with subject-matter jurisdiction).

¶ 12 In the present case, the superior court clearly had subject-matter jurisdiction over Burk's request to modify parenting time. Ariz.Rev.Stat. ("A.R.S.") §§ 25–1031, –1032 (Supp.2006); *In re Marriage of Dorman*, 198 Ariz. 298, 301, ¶ 7, 9 P.3d 329, 332 (App.2000). Assuming, as we must, that Culek based her recommendation solely on a disapproval of Burk's religious beliefs, she indisputably erred. *See Smith v. Smith*, 90 Ariz. 190, 193, 367 P.2d 230, 233 (1961) ("[I]f a teaching does not conflict with the fundamental law of the land a parent may not be deprived of the custody of a child because of the court's disagreement with such parent as to religious beliefs."); cf. *Stapley v. Stapley*, 15 Ariz. App. 64, 70, 485 P.2d 1181, 1187 (1971) (noting court may bar custody or enter appropriate order to protect child when serious danger to life or health of child results from parent's religious views). Had the court adopted Culek's recommendation, however, it would not have lost subject-matter jurisdiction, and the cases cited by Burk do not say otherwise.[9] Consequently, because Culek acted within the court's subject-matter jurisdiction, her purported malicious and illegal acts did not overcome the application of judicial immunity. *Mireles*, 502 U.S. at 12–13, 112 S.Ct. 286 ("If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error ... or was in excess of his authority.'" (quoting *Stump*, 435 U.S. at 356–57, 98 S.Ct. 1099)).

**B. Scope of court's directive**

¶ 13 Burk next argues that Culek forfeited judicial immunity by evaluating Burk's religious beliefs because this act exceeded the court's directive set forth in its referral order and authorized by A.R.S. § 25–403 (Supp. 2006).[10] To support her argument, Burk relies on this court's decision in *Lavit*, which extended judicial immunity to a psychologist directed by court order to perform a child custody evaluation. 173 Ariz. at 101, 839 P.2d at 1146. In explaining its decision, the court recognized that application of judicial immunity to non-judges "depends upon the nature of the activities performed and the relationship to the judicial function." *Id.* at 100, 839 P.2d at 1145. In distinguishing situations in which a court has not applied immunity to non-judges, the court cited *Acevedo*, which held that judicial immunity did not apply to probation officers who did not act pursuant to a court directive and "had in fact ignored the specific direction of the court." *Lavit*, 173 Ariz. at 100, 839 P.2d at 1145 (citing *Acevedo*, 142 Ariz. at 322, 690 P.2d at 41). Burk argues that Culek, like the probation officers in *Acevedo*, is not shielded by judicial immunity because she acted contrary to the court's inherent directive to perform her evaluation without violating Burk's constitutional rights.

¶ 14 Burk scrutinizes the court's directive too narrowly for purposes of applying judicial immunity. In *Mireles*, the Court rejected a similar position urged by an attorney who had sued a judge for authorizing police officers to use excessive force to bring the attorney to court. 502 U.S. at 10, 12, 112 S.Ct. 286. The court of appeals had ruled that the judge was not immune from suit because his directive to the officers was not a "judicial act." *Id.* at 12, 112 S.Ct. 286. The Supreme

9. *See Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 353–54 (D.C.2005) (holding First Amendment precludes civil courts from resolving disputes involving religious organization when such disputes affect religious doctrine or church polity or administration but does not absolutely bar review of acts of religious organizations); *Roman Catholic Diocese of Jackson v. Morrison*, 905 So.2d 1213, 1248, ¶ 131 (Miss.2005) (deciding First Amendment does not deprive court of subject-matter jurisdiction over plaintiffs' claims against church diocese for negligent hiring, assignment, and retention of former priest accused of sexually abusing children). Burk's citation to cases addressing prosecutorial immunity are likewise unpersuasive. *See Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) (recognizing in challenge to dismissal of criminal indictment that prosecution cannot deliberately base charge on unjustifiable standard such as religion); *Lomaz v. Hennosy*, 151 F.3d 493, 498–99 (6th Cir.1998) (holding prosecutors entitled to absolute immunity for initiating prosecution and presenting state's case but only entitled to qualified immunity for administrative and investigative acts).

10. Section 25–403 provides that the court shall determine child custody in accordance with the child's best interests. In making this determination, the court is required to consider all relevant factors, including a number of specific factors.

Court reversed, concluding that a judge's direction to officers to bring a person to court is a "function normally performed by a judge" and therefore is a judicial act. *Id.* Although authorizing excessive force to compel court attendance is not a normal judicial function, the Court maintained that the nature of the act rather than the act itself was the linchpin for determining whether the judge had performed a judicial act. *Id.* Significantly, the Court reasoned as follows:

> But if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a 'nonjudicial' act, because an improper or erroneous act cannot be said to be normally performed by a judge. If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'

*Id.* at 12–13, 112 S.Ct. 286 (quoting *Stump*, 435 U.S. at 356, 98 S.Ct. 1099).

¶ 15 The *Mireles* Court's view of what constitutes a judicial act for purposes of applying immunity guides us in determining whether Culek forfeited immunity for acting beyond the scope of the court's directive. Rather than examining Culek's manner of performing her duties, as Burk urges, we must consider the nature of Culek's function and its relationship to the judicial process. *Id.* at 12–13, 112 S.Ct. 286; *Acevedo*, 142 Ariz. at 321, 690 P.2d at 40 ("The consistent reasoning in [cases applying judicial immunity] is that each non-judicial officer performed a function, pursuant to a court directive, which was related to the judicial process."); *Lavit*, 173 Ariz. at 99, 839 P.2d at 1144 ("In determining whether absolute immunity applies, the focus is on the nature of the function performed . . . .").

¶ 16 The superior court referred Burk's · motion to modify parenting time to Conciliation Services for evaluation and report. Culek, as an employee of Conciliation Services, performed this function and presented a report to the court for its consideration. Thus, regardless of any error or malice by Culek in performing her function, she performed a function that was an integral part of the judicial process, thereby entitling her to the cloak of judicial immunity. *Acevedo*, 142 Ariz. at 321, 322, 690 P.2d at 40, 41.

## C. Court's use of report

■ ¶ 17 Burk finally argues that judicial immunity cannot apply in this case because the superior court rejected Culek's recommendations in making its ruling. We are unaware of any support for this assertion. *Lavit*, which Burk cites as authority, held that the court-appointed psychologist in that case was entitled to immunity because he acted pursuant to court directive and aided the court in making a child custody decision. 173 Ariz. at 101, 839 P.2d at 1146. But the court did not limit application of judicial immunity to functions resulting in work product that a judge later adopts. Rather, the court reiterated that application of judicial immunity to non-judges "depends upon the nature of the activities performed and the relationship to the judicial function." *Id.* at 100, 839 P.2d at 1145. Limiting our examination to Culek's court-directed function and its relationship to the judicial process, we conclude that Culek's act in evaluating Burk's request and reporting to the superior court invoked judicial immunity regardless of the court's subsequent rejection of her recommendations.

¶ 18 Additionally, the public policy underlying judicial immunity would not be served if we adopted Burk's approach. To refuse to extend immunity to Culek only because the judge rejected her recommendations would chill similarly situated non-judge personnel from engaging in independent evaluations for fear of being personally sued for damages. *Acevedo*, 142 Ariz. at 321, 690 P.2d at 40 ("The underlying policy of uninhibited judgment is served by removing the possibility that 'a non[-]judicial officer who is delegated judicial duties in aid of the court [will] be a "lightning rod for harassing litigation" aimed at the court.' ") (citations omitted).

## CONCLUSION

¶ 19 For the foregoing reasons, the superior court correctly ruled that Culek and her employer were shielded from Burk's suit under the doctrine of judicial immunity, regard-

less of any discriminatory purpose underlying Culek's evaluation and recommendations and the court's eventual rejection of those recommendations. We therefore affirm the court's dismissal of the complaint.[11]

CONCURRING: PATRICIA K. NORRIS and DIANE M. JOHNSEN, JJ.

11. In light of our conclusion, we do not address the parties' additional arguments concerning qualified immunity.