226 P.3d 394

**In re MH 2008–002659.**

**No. 1 CA–MH 09–0007.**

Court of Appeals of Arizona,
Division 1, Department E.

Jan. 21, 2010.

Andrew P. Thomas, Maricopa County Attorney by Bruce P. White, Anne C. Longo, Deputy County Attorneys, Civil Division, Phoenix, Attorneys for Appellee.

James Haas, Maricopa County Public Defender By Kathryn L. Petroff, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

HALL, Judge.

¶ 1 Appellant appeals from the order civilly committing her for mental health treatment. She argues that her due process rights were violated when she was evaluated before being served a copy of the court order requiring her involuntary hospitalization for evaluation. *See* Ariz.Rev.Stat. (A.R.S.) § 36–529(D) (2009). Specifically, appellant claims that the lack of timely notice deprived her of the opportunity to invoke her statutory right to a hearing to determine whether she should have been involuntarily hospitalized for evaluation. Because appellant could not have prevented the evaluation from proceeding even had the court determined that she should not be hospitalized during the evaluation process, we conclude that she was not prejudiced in her ability to defend against the subsequently filed Petition for Court–Ordered Treatment (PCOT). Accordingly, we affirm the order for treatment.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On November 18, 2008, appellant's son, G.K., applied for a court-ordered mental health evaluation of appellant under A.R.S. § 36–520 (2009) and/or emergency admission for evaluation under A.R.S. § 36–524 (2009). G.K.'s application claimed that his mother had threatened suicide, broken dishes, spoken to imaginary people, spent $190,000 on purchases from a consumer television network, and had cooked a microwave dinner on a stovetop and watched it burn. Later the same day, after reviewing the application, Dr. G. filed a Petition for Court–Ordered Evaluation (PCOE) in accordance with A.R.S. § 36–523, in which he alleged that there was reasonable cause to believe that appellant was, as a result of a mental disorder, a danger to herself or others or persistently or acutely disabled (PAD).

¶ 3 Following its review of the PCOE, on November 20, 2008, the superior court issued a Detention Order for Evaluation and Notice under A.R.S. § 36–529(A). This Order appointed a public defender to represent appellant and stated that appellant had a right to "a hearing to determine whether [s]he should be hospitalized for the seventy-two hour evaluation period." The Order was not served on appellant until November 24, 2008 at the psychiatric facility where she was being detained pending the evaluation.

¶ 4 Meanwhile, on November 21, 2008, two physicians examined appellant as part of the evaluation. One of the physicians signed a PCOT of appellant on the same day. The petition was filed on November 24, 2008.

¶ 5 The superior court held a hearing on the PCOT on December 2, 2008. The court found clear and convincing evidence that appellant was persistently and acutely disabled as a result of a mental disorder, needed treatment, and was unable or unwilling to accept voluntary treatment. It ordered combined inpatient and outpatient treatment not to exceed 365 days, with the inpatient portion not to exceed 180 days. The court also issued a Detention Order for Treatment.

¶ 6 Appellant timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1) (2003), –2101(B) (2003), and 36–546.01 (2009).

## DISCUSSION

¶ 7 Appellant initially asserts that her statutory right to a hearing was violated when

she was not personally served with a copy of the Detention Order until after the evaluation had occurred. Her claim is based on A.R.S. § 36–529(D), which provides:

> If [a] person is involuntarily hospitalized, the person shall be informed by his appointed attorney of his rights to a hearing to determine whether he should be involuntarily hospitalized for evaluation and to be represented at the hearing by an attorney. If the patient requests a hearing to determine whether he should be involuntarily hospitalized during evaluation, the court shall schedule a hearing at its first opportunity.

Because the evaluation was concluded before she was served, appellant further contends that she was denied a procedural due process right to contest the Detention Order. As we understand her argument, appellant is asserting that had she been given notice of her rights under § 36–529(D) before her evaluation, she could have requested a hearing at which she would have had an opportunity to contest the validity of the Detention Order by showing that she should not have been involuntarily hospitalized, thereby preventing the evaluation. As we explain below, we agree with appellant that she was entitled to be informed of her right to request a hearing to determine whether she should have been involuntarily hospitalized during the evaluation. We conclude, however, that although a proposed patient has a statutory right to contest her detention for evaluation, she has no right under the statute to prevent the evaluation itself.[1]

■ ¶ 8 As a preliminary matter, we address the State's claim that appellant waived this argument by failing to raise it before the superior court. Appellant does not dispute her failure to raise the issue below, but nonetheless urges us to consider it.

■■ ¶ 9 We do not consider arguments raised for the first time on appeal except under exceptional circumstances. *See Trantor v. Fredrikson,* 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994). This rule was "estab-

lished for the purpose of orderly administration and the attainment of justice," *Hawkins v. Allstate Ins. Co.,* 152 Ariz. 490, 503, 733 P.2d 1073, 1086 (1987), and protects the party against whom the new argument is asserted from surprise. *Int'l Life Ins. Co. v. Sorteberg,* 70 Ariz. 92, 98, 216 P.2d 702, 705 (1950). The rule is procedural, not jurisdictional; the court "undoubtedly has the power [to review a question raised for the first time on appeal], but ordinarily will not exercise it. The question is one of administration, not of power." *Hawkins,* 152 Ariz. at 503, 733 P.2d at 1086 (quoting *Town of South Tucson v. Board of Supervisors,* 52 Ariz. 575, 582–83, 84 P.2d 581, 584 (1938)).

■ ¶ 10 We have previously considered arguments first raised on appeal involving the interpretation of a statute, *Home Builders Ass'n of Central Arizona v. City of Maricopa,* 215 Ariz. 146, 151 n. 3, 158 P.3d 869, 874 n. 3 (App.2007), or when considering constitutional arguments, *In re MH 2008–000028,* 221 Ariz. 277, 280, ¶ 11, 211 P.3d 1261, 1264 (App.2009). But the mere invocation of a liberty interest or due process challenge is not necessarily a sufficient reason to forego application of the waiver rule. *Compare In re MH–1140–6–93,* 176 Ariz. 565, 568, 863 P.2d 284, 287 (App.1993) (refusing to consider on appeal due process challenges not made at trial) *with In re MH 2006–000023,* 214 Ariz. 246, 248–49, ¶¶ 8–11, 150 P.3d 1267, 1269–70 (App.2007) (considering statutory notice issue despite failure to object at trial).

¶ 11 We conclude that the circumstances of this case constitute an exceptional circumstance in which we should not apply the waiver rule. The premise underlying appellant's claim—that the PCOE would have to be dismissed if the court determined that she should not be involuntarily hospitalized—raises a purely legal issue of statutory interpretation. Her failure to object at trial did not prejudice the State because there are no additional facts that could have been presented to address this purely legal question. Ad-

---

**1.** The record does not reflect whether an attorney from the public defender's office met with appellant and informed her of her right to a hearing as required by § 36–529(D). Because we conclude that § 36–529(D) does not grant a proposed patient the right to a hearing on wheth-

er the PCOE is supported by adequate reasonable cause, we need not determine whether the failure to timely serve a proposed patient with the detention order may be considered harmless under these circumstances.

dressing appellant's argument on its merits aids effective administration and judicial efficiency by allowing us to provide guidance on the interpretation of the statutory scheme applicable to mental health hearings, which is an issue of statewide importance.

¶ 12 To evaluate appellant's due process claims, we must examine the statutory process for mental health evaluation and treatment. Statutory interpretation issues are questions of law that we review de novo. *Schwarz v. City of Glendale,* 190 Ariz. 508, 510, 950 P.2d 167, 169 (App.1997). "When analyzing statutes, we apply 'fundamental principles of statutory construction, the cornerstone of which is the rule that the best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction.' " *Deer Valley Unified Sch. Dist. No. 97 v. Houser,* 214 Ariz. 293, 296, ¶ 8, 152 P.3d 490, 493 (2007) (quoting *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991)). "Each word, phrase, clause, and sentence [of a statute] must be given meaning so that no part will be void, inert, redundant, or trivial." *Deer Valley,* 214 Ariz. at 296, ¶ 8, 152 P.3d at 493 (quotation omitted). In analyzing a statute, we attempt to give it meaning consistent with "the statutory scheme as a whole." *State v. Ross,* 214 Ariz. 280, 283, ¶ 22, 151 P.3d 1261, 1264 (App.2007) (quoting *Hughes v. Jorgenson,* 203 Ariz. 71, 73, ¶ 11, 50 P.3d 821, 823 (2002)).

¶ 13 The opportunity for hearing guaranteed pursuant to § 36–529(D) allows the individual to challenge the determination that she "should be *involuntarily hospitalized* for evaluation," A.R.S. § 36–529(D) (emphasis added), not the determination that she should be evaluated. This conclusion follows from a review of the statutory scheme governing court-ordered evaluations. A court-ordered evaluation is initiated when "[a]ny responsible individual" applies for an evaluation of a person who is alleged to be, "as the result of a mental disorder, a danger to self or others, persistently or acutely disabled, or gravely disabled and who is unwilling or

unable to undergo a voluntary evaluation." A.R.S. § 36–520(A). A prepetition screening examination is then conducted by a screening agency, which is required to prepare a PCOE if the proposed patient is unable or unwilling to be evaluated and falls within one of four statutory categories of mental disorder. A.R.S. § 36–521(D) (2009). A PCOE must contain a "statement alleging that there is reasonable cause to believe that the proposed patient has a mental disorder and is as a result a danger to self or others, is persistently or acutely disabled or is gravely disabled and is unwilling or unable to undergo voluntary examination." A.R.S. § 36–523(A)(4) (2009). In addition, the petitioner is required to advise the court whether "without immediate or continuing hospitalization [the proposed patient] is *likely* to suffer serious physical harm or further deterioration or inflict serious physical harm upon another person." A.R.S. § 36–523(B)(1) (emphasis added).

¶ 14 If, from its review of the PCOE, a court finds that the allegations establish "reasonable cause" to warrant an evaluation, but does not determine that the proposed patient is "*likely* to present a danger to self or others or further deteriorate prior to his hearing on court-ordered treatment," [2] it then issues an order directing the person to "submit to an evaluation at a designated time and place, specifying that the evaluation will take place on an inpatient or outpatient basis." A.R.S. § 36–529(A) (2009). However, if the court determines that there is reasonable cause for an evaluation but that the proposed patient "requires immediate or continued hospitalization prior to his hearing on court-ordered treatment," the court "shall order the proposed patient taken into custody and evaluated at an evaluation agency." A.R.S. § 36–529(B). Taken together, these statutes provide: (1) a proposed patient may not be compelled to submit to a mental health evaluation unless there are reasonable grounds to believe that the person suffers from a mental disorder and that at least one of the four statutory criteria are established by the PCOE, and (2)

---

**2.** In context, this phrase has a meaning identical to "likely to suffer serious physical harm or further deterioration or inflict serious physical harm upon another person" as used in § 36–

523(B)(1). *See* A.R.S. §§ 36–501(5) (2009) (defining "Danger to others") and –501(6) ("Danger to self").

the person may not be involuntarily hospitalized during the evaluation unless "he is likely to suffer serious physical harm or further deterioration or inflict serious physical harm upon another person." Thus, a proposed patient may be kept or taken into custody only if the court determines that the person requires immediate or continued hospitalization.

¶ 15 As previously noted, a person has the right to "a hearing to determine whether he should be involuntarily hospitalized during evaluation" at the court's "first opportunity." A.R.S. § 36–529(D). The plain language of this provision makes clear that its purpose is to provide the proposed patient an opportunity to contest whether she should be hospitalized during the evaluation, but not whether she should be evaluated at all. In other words, § 36–529(D) permits the proposed patient a hearing to show that she is not likely to suffer serious physical harm or further deterioration or inflict serious harm upon another person if not hospitalized during the evaluation. Even if the court determines that the proposed patient should not be involuntarily hospitalized during the evaluation, such a ruling would not invalidate the court's determination that reasonable cause exists to believe that the proposed patient should be required to submit to an evaluation. This is so because the word "likely" does not signify a particular standard of proof that must be met before a proposed patient may be hospitalized. Rather, considering the context in which it is used, it conveys the idea that a person may reasonably be expected to suffer serious physical harm, inflict it on others, or further deteriorate if not immediately hospitalized. *See Commonwealth v. Boucher*, 438 Mass. 274, 780 N.E.2d 47, 49–50 (2002) (explaining that "likely" as used in Massachusetts' sexually dangerous person statute is not a term subject to "mathematical precision" but indicates something that is reasonably to be expected in the context of the particular facts and circumstances at hand). Hence, we find no support for appellant's claim that the failure to provide her timely

notification of her right to a hearing to contest her hospitalization also denied her the opportunity to derail the court-ordered evaluation. *Cf. In re MH 2006–002044,* 217 Ariz. 31, 33, ¶ 7, 170 P.3d 280, 282 (App.2007) (rejecting claim that an involuntary treatment and commitment order should be vacated because the person was held longer than twenty-four hours in emergency custody in violation of A.R.S. § 36–527(A) (2009) ).[3]

## CONCLUSION

¶ 16 A proposed patient must receive timely notice of the right to a hearing to contest her involuntary hospitalization during the evaluation. However, even if appellant had requested such a hearing, she would not have been permitted by A.R.S. § 36–529(D) to contest the finding of reasonable cause for an evaluation. She is therefore not entitled to have the treatment order dismissed.

CONCURRING: DONN KESSLER and PATRICIA OROZCO, Judges.

**3.** Because appellant was not prejudiced in her ability to defend against the subsequently filed PCOT, this case is not analogous to *In re MH 2006–000023,* 214 Ariz. at 248–49, ¶¶ 10–11, 150 P.3d at 1269–70, in which we held that delayed

notice of a treatment hearing was inherently prejudicial because the prospective patient and her counsel were deprived of adequate time and opportunity to prepare for the hearing.