IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

THOMAS and JENNIFER GRIGGS, husband and wife,
*Plaintiffs/Appellants*,

*v.*

OASIS ADOPTION SERVICES, INC.; CATHERINE BRAMAN;
SARAH L. PEDRAZZA,
*Defendants/Appellees*.

No. 1 CA-CV 15-0289
FILED 10-6-2016

Appeal from the Superior Court in Maricopa County
No. CV 2012-014904
The Honorable Mark H. Brain, Judge

**VACATED AND REMANDED**

COUNSEL

Debus, Kazan & Westerhausen, LTD, Phoenix
By Larry L. Debus, Tracey Westerhausen
*Counsel for Plaintiffs/Appellants*

Renaud Cook Drury Mesaros, PA, Phoenix
By Denise J. Wachholz, Charles S. Hover, III
*Counsel for Defendants/Appellees*

---

## OPINION

Judge Margaret H. Downie delivered the opinion of the Court, in which Presiding Judge Patricia K. Norris and Judge Samuel A. Thumma joined.

---

D O W N I E, Judge:

¶1         Thomas and Jennifer Griggs appeal from the entry of summary judgment in favor of Oasis Adoption Services, Inc., Catherine Braman, and Sarah L. Pedrazza (collectively, "Oasis") on the grounds of judicial immunity.[1]  For the following reasons, we vacate that judgment and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY[2]

¶2         The Griggses met D.R. through their church and agreed to adopt her unborn child.  The Griggses retained Oasis to "provide adoption services," including the statutorily required investigation and report (also called a "home study") that prospective adoptive parents must obtain to be certified to adopt.  *See* Ariz. Rev. Stat. ("A.R.S.") § 8-105(A).

¶3         After retaining Oasis, the Griggses filed an adoption certification application, whereupon the juvenile court issued a July 8, 2011 minute entry that provided, in pertinent part:

> IT IS ORDERED pursuant to ARS 8-104, that Oasis Adoption Services shall complete the investigation and file an Adoptive Home Study with the Court by 10/06/2011.[3]

---

[1]    During the relevant time period, Braman was the adoption agency's executive director, and Pedrazza served as assistant director.

[2]    We consider the facts and reasonable inferences therefrom in the light most favorable to the non-moving party — the Griggses.  *See Hill-Shafer P'ship v. Chilson Family Tr.*, 165 Ariz. 469, 472 (1990).

[3]    We agree with the superior court that the reference to A.R.S. § 8-104, instead of § 8-105, appears to be a typographical error.

**¶4**        Disagreements arose between Oasis and the Griggses about the scope of the certification investigation, causing the Griggses to terminate Oasis's services in a July 27, 2011 letter, stating:

> [We] have consulted with legal counsel and other adoption agencies regarding the adoption process and your recommendations.  We have made a decision to respectfully withdraw our application for adoption through the Oasis Adoption Agency.

Thereafter, the Griggses worked with Olos Adoption and Child Welfare Agency ("Olos") to complete the certification process.

**¶5**        Unbeknownst to the Griggses, on July 28, 2011, Braman sent an *ex parte* letter to the juvenile court detailing concerns Oasis had about Thomas Griggs and advising the court that the Griggses were "withdrawing from the home study process" with Oasis.

**¶6**        D.R. gave birth to a baby girl in August 2011.  The Griggses took the child home the next day, and the juvenile court awarded them temporary custody of her.  *See* A.R.S. § 8-108 (delineating procedure for uncertified persons to obtain temporary custody pending certification).  Meanwhile, Olos submitted a home study recommending that the court certify the Griggses as acceptable to adopt.

**¶7**        In late September 2011, the juvenile court denied the Griggses' certification application without explanation.  The Griggses timely requested reconsideration.  *See* Ariz. R. P. Juv. Ct. 77(C) (if denied certification to adopt, applicant may request evidentiary hearing).

**¶8**        During an October status conference, the juvenile court discussed the *ex parte* letter received from Oasis, which the Griggses had not seen.  The court ordered the Griggses to appear at an order to show cause hearing three days later.  The court also vacated the temporary custody order and directed Child Protective Services to take custody of the child.  The court further ordered Oasis to disclose its July 28, 2011 letter to the Griggses, as well as "all relevant and discoverable information in [their] file."[4]  The court set an evidentiary hearing in December on the Griggses' motion for reconsideration.

---

[4]     The Griggses had previously asked Oasis to provide a copy of its July 28 letter, but Oasis refused.

**¶9**        At the evidentiary hearing, the juvenile court heard testimony from Braman, Pedrazza, Thomas Griggs, Jennifer Griggs, and a representative of Olos.  On January 31, 2012, the court certified the Griggses as acceptable to adopt.  By that time, though, D.R.'s child had been placed with another family.

**¶10**        The Griggses filed a civil complaint against Oasis, alleging abuse of process, negligence, and infliction of emotional distress.  Among other things, the Griggses alleged that Oasis's *ex parte* letter to the court contained "untruths and misstatements" that caused them to lose custody of D.R.'s baby.  Oasis moved for summary judgment on the basis of judicial immunity.  After briefing and oral argument, the superior court granted Oasis's motion.  The Griggses filed a timely notice of appeal from a final judgment entered after the superior court denied their motion for new trial.  We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶11**        We review both the grant of summary judgment and the application of judicial immunity *de novo.  See Emmett McLoughlin Realty, Inc. v. Pima Cty.*, 212 Ariz. 351, 353, ¶ 2 (App. 2006) (summary judgment); *Lavit v. Superior Court*, 173 Ariz. 96, 99 (App. 1992) (judicial immunity).

## I.        Adoption Certification Process

**¶12**        In determining whether Oasis is entitled to judicial immunity for the challenged conduct, we first examine the role adoption agencies fulfill in the certification process — a role that is comprehensively defined by statutes and regulations.  *See In re Webb's Adoption*, 65 Ariz. 176, 179 (1947) (adoption is a purely statutory right unknown at common law); *Sargent v. Superior Court*, 28 Ariz. 605, 607 (1925) ("An adoption proceeding is a statutory one, and is governed by the terms of the statute providing for it.").

**¶13**        The Department of Child Safety ("DCS") licenses adoption agencies.  A.R.S. § 8-126.  DCS also oversees licensed agencies, assists "the staffs of all agencies by giving advice on methods and procedures," and establishes rules for "[t]he form and content of investigations, reports and studies concerning adoption placement."  A.R.S. § 8-126(3), (4)(c).  DCS has promulgated extensive rules governing adoption-related activities, including certification investigations and reports.  *See* Ariz. Admin. Code ("A.A.C.") R21-5-301, *et seq.*

¶14        The version of A.R.S. § 8-105(A) in effect when the certification proceedings at issue here occurred stated, in pertinent part:[5]

> Before any prospective adoptive parent may petition to adopt a child the person shall be certified by the court as acceptable to adopt children.  A certificate shall be issued only after an investigation conducted by an officer of the court, by an agency or by the division.

The legislature has defined the scope of certification investigations, as well as the content of home study reports that agencies must submit to the court:

> This investigation and report to the court shall consider all relevant and material facts dealing with the prospective adoptive parents' fitness to adopt children and shall include:
>
> 1.  A complete social history.
>
> 2.  The financial condition of the applicant.
>
> 3.  The moral fitness of the applicant.
>
> 4.  The religious background of the applicant.
>
> 5.  The physical and mental health condition of the applicants.
>
> 6.  Any court action for or adjudication of child abuse, abandonment of children, dependency or termination of parent-child relationship in which the applicant had control, care or custody of the child who was the subject of the action.
>
> 7.  Whether the person or persons wish to be placed on the central registry established in subsection M of this section.
>
> 8.  All other facts bearing on the issue of the fitness of the prospective adoptive parents that the court, agency or division may deem relevant.

---

[5]        We rely on statutory provisions in effect at the time of the juvenile court proceedings — 2011 — some of which have since been amended.

A.R.S. § 8-105(F).[6]

¶15        The legislature has also mandated timeframes for certification-related activities:

> Within ninety days after the original application . . . has been accepted, the division or the agency or a person or agency designated by the court to conduct an investigation shall present to the juvenile court the written report required by subsection F of this section, which shall include a definite recommendation for certifying the applicant as being acceptable or nonacceptable to adopt children and the reasons for the recommendation.

A.R.S. § 8-105(H).  Within 60 days of receiving a home study, the juvenile court "shall certify the applicant as being acceptable or nonacceptable to adopt children based on the investigation report and recommendations of the report."   A.R.S. § 8-105(I).   The court may require additional investigation necessary to "make an appropriate decision regarding certification."  A.R.S. § 8-105(J).

## II.      Judicial Immunity

¶16        In Arizona, judicial immunity is a common law exception to the general rule of tort liability.  *See Adams v. State*, 185 Ariz. 440, 447 (App. 1995) ("Judicial immunity is a creature of common law and the courts are responsible for shaping and monitoring the course of the common law.").  "There is perhaps no doctrine more firmly established than the principle that liability follows tortious wrongdoing; that where negligence is the proximate cause of injury, the rule is liability and immunity is the exception."  *Stone v. Ariz. Highway Comm'n*, 93 Ariz. 384, 392 (1963).   "[I]mmunity deprives individuals of a remedy for wrongdoing and should be bestowed only when and at the level necessary."  *Grimm v. Ariz. Bd. of Pardons and Paroles*, 115 Ariz. 260, 265–66 (1977) (rejecting absolute immunity for parole board members in favor of qualified immunity).

---

[6]        DCS has prescribed additional information agencies must obtain as part of their certification investigations.  *See* A.A.C. R21-5-404.  DCS also dictates substantive requirements for certification investigations and reports.  *See* A.A.C. R21-5-405.

¶17      Judicial officers are absolutely immune "from damages lawsuits for their judicial acts." *Burk v. State*, 215 Ariz. 6, 9, ¶ 7 (App. 2007). Over the years, judicial immunity has been extended to "[c]ourt officers, employees, and agents who perform functions intimately related to or . . . an integral part of the judicial process." *Id*. *See, e.g., Acevedo v. Pima Cty. Adult Prob. Dep't*, 142 Ariz. 319, 321–22 (1984) (probation officers submitting presentence investigation reports); *Lavit*, 173 Ariz. at 98–99 (psychologist acting under court directive to evaluate family court litigants); *Burk*, 215 Ariz. at 12–13, ¶ 19 (court employee making child custody recommendation); *Widoff v. Wiens*, 202 Ariz. 383, 386, ¶ 11 (App. 2002) (court-appointed guardian *ad litem* in family court proceeding); *Desilva v. Baker*, 208 Ariz. 597, 599, ¶ 1 (App. 2004) (probation officers filing revocation petitions).

¶18      "The nature and scope of judicial immunity raise perplexing and somewhat amorphous issues, which are not susceptible to easy resolution in some cases." *Adams*, 185 Ariz. at 443. As in *Adams*, "[t]his is such a case." *Id*. For purposes of our analysis, we assume, without deciding, that adoption agencies are entitled to judicial immunity for home studies they submit to the court pursuant to A.R.S. § 8-105. Indeed, this Court relied on a similar assumption in *Adams*, when considering whether Arizona Department of Economic Security adoption caseworkers were entitled to immunity for certain conduct. 185 Ariz. at 445.

¶19      Oasis, though, did not submit a home study report pursuant to A.R.S. § 8-105. It instead sent an *ex parte* letter to the court after its services were terminated. Other than expressing concerns about Thomas Griggs, Oasis did not provide the statutory detail required of an investigative report and made no "definite recommendation" regarding certification, as required for home study reports. *See* A.R.S. § 8-105(H). Nor did Oasis's letter address topics that adoption agencies must consider in making certification recommendations. *See* A.A.C. R21-5-406. Had the submission been a home study, the Griggses would have been entitled by law (and by their contract with Oasis) to receive a copy of the report before it was filed with the court. *See* A.A.C. R21-5-406(D) (adoption agency recommending against certification "shall send the applicant written notice of the unfavorable recommendation, the reason for the denial, and an explanation of the applicant's right under A.R.S. § 8-105, to petition the court for review" at least five days before filing report with the court).

¶20      "To determine when a non-judge is cloaked with judicial immunity, we examine the nature of the function entrusted to that person

7

and the relationship of that function to the judicial process." *Burk*, 215 Ariz. at 9, ¶ 8. A generalized connection to the judicial process does not confer immunity for all activities. In *Acevedo*, for example, the court held that probation officers are entitled to judicial immunity for presentence reports submitted to the court, but rejected as over-broad the proposition that judicial immunity attaches to the supervision of probationers "because the task arises out of a judicial proceeding and is a continuation of that proceeding." 142 Ariz. at 321–22. And in *Adams*, we rejected the notion that "because DES [adoption] caseworkers work closely with the court and are expected to comply with its guidelines as well as the statutory and regulatory requirements, these nonjudicial employees are absolutely immune from liability for all adoption-related acts or omissions." 185 Ariz. at 446.

**¶21** In submitting its *ex parte* letter, Oasis was not acting pursuant to delegated judicial authority or any mandate from the legislative or executive branch. Oasis's suggestion that adoption agencies are immune for anything they do in furtherance of or in connection with a certification investigation finds no support in our appellate jurisprudence. *See Lavit*, 173 Ariz. at 101 ("Narrow parameters . . . apply to the activities to which absolute immunity applies."). Even probation officers, "a well-recognized part of the judicial department," *Desilva*, 208 Ariz. at 603, ¶ 23, do not enjoy immunity for all of their probation-related activities.

**¶22** In evaluating whether conduct is protected by judicial immunity, some courts consider whether due process protections exist for individuals potentially aggrieved by the underlying conduct – a consideration we also deem relevant. *See, e.g., Demoran v. Witt*, 781 F.2d 155, 158 (9th Cir. 1985) (probation officers filing presentence reports are immune, in part because "a plethora of procedural safeguards surround the filing of a presentencing report"); *cf. Adams*, 185 Ariz. at 446 ("We cannot say there are sufficient accountability safeguards inherent to or routinely used . . . to warrant the granting of absolute immunity in this context."). Although due process considerations were not specifically discussed in *Lavit* or *Widoff*, the aggrieved parties in those cases received notice and an opportunity to be heard about the conduct later deemed immunized. *See Lavit*, 173 Ariz. at 98 (court order entitled parties to copy of evaluator's report); *Widoff*, 202 Ariz. at 385, ¶ 4 (guardian *ad litem* recommendations presented at evidentiary hearing attended by the parties).

**¶23** Protections exist for prospective adoptive parents who are facing adverse certification recommendations. *See* A.A.C. R21-5-406(D)

(agency recommending against certification must give written notice of recommendation and reasons therefor at least five days before report is filed with court). The same is not true for the *ex parte* letter at issue here. Moreover, the record reflects that Oasis refused to give the Griggses a copy of the July 28 letter after they learned of its existence, depriving them of the right to notice and an opportunity to be heard before the court took adverse action against them. *See Curtis v. Richardson*, 212 Ariz. 308, 312, ¶ 16 (App. 2006) (Due process rights include "notice and an opportunity to be heard at a meaningful time and in a meaningful manner."). Oasis shared the letter with the Griggses only after being ordered to do so by the court.

**¶24** Oasis contends that, as a matter of public policy, its conduct should be insulated from liability because the best interests of potential adoptive children are at stake. But that argument sweeps too broadly, in contravention of the tenet that immunity "should be bestowed only when and at the level necessary." *Grimm*, 115 Ariz. at 265–66; *see also Ryan v. State*, 134 Ariz. 308, 311 (1982) ("[W]e propose to endorse the use of governmental immunity as a defense only when its application is necessary to avoid a severe hampering of a governmental function or thwarting of established public policy."). To the extent Oasis had qualms about the Griggses' suitability as adoptive parents, it could have communicated those concerns in a court filing that afforded the Griggses notice and an opportunity to be heard regarding information submitted to (and relied on by) the court in making a decision about their ability to adopt children.

## CONCLUSION[7]

**¶25** We vacate the judgment in favor of Oasis and remand for further proceedings regarding the Griggses' complaint.[8] The Griggses are

---

[7] We do not address Oasis's alternative argument — urged for the first time on appeal — that the Griggses cannot establish the necessary elements of negligence. *See In re MH 2008-002659*, 224 Ariz. 25, 27, ¶ 9 (App. 2010) ("We do not consider arguments raised for the first time on appeal except under exceptional circumstances.").

[8] Our decision to vacate the judgment in its entirety obviates the need to separately address the Griggses' challenge to the award of taxable costs.

entitled to recover their taxable costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA